# CITIZENS TRUST COMPANY, Receiver, Appellant, v. L. C. GUING.

### Division Two, June 23, 1921.

1. **ACTION AT LAW:** Equitable Defense: Trial to Jury. The interposition of an equitable defense to an action at law, in the absence of a prayer for affirmative relief based thereon, does not convert the action into one in equity, and does not preclude a submission of the case to a jury.

2. ———: Peremptory Instruction: Ignoring Defenses. A peremptory instruction to the jury to find for plaintiff cannot be given if the giving of it ignores a valid defense pleaded and supported by substantial evidence.

3. **ESTOPPEL:** Submission to Jury. There is no rule of law or equity which precludes a defendant sued on a note signed by him from interposing the defense of estoppel, or from having it submitted to the jury where the evidence tends to sustain it.

4. ———: ———: Defense to Action on Note: Agreement With Trustee Appointed by Court. When sued on a note given to a bank, an agreement between the maker and the bank by which the maker agreed to and did surrender a note for a like amount given him by a lumber company in consideration of a release by the bank of the note sued on, is a valid defense, and if pleaded and supported by substantial evidence should be submitted to the jury. And if the agreement, instead of being made with the bank, was made with the trustees of the insolvent bank appointed by the court, who, as agents of the bank in collecting its assets, acquired the stock of the lumber company, then said agreement was likewise a valid defense; for, although as trustees appointed by the court they were not authorized to settle a claim of the bank for less than its face value without permission of the court, they acquired the stock of the lumber company charged with its indebtedness, and in agreeing to release defendant on his note to the bank upon the surrender of the lumber company's note for a like amount given to him they sacrificed no legitimate claim due the bank.

5. ————: Power of Court Officer: Settlement. Those who deal with officers appointed by the court to administer the affairs of an insolvent corporation are required to take notice of the limitations which the law places upon the powers of such officers; but this does not preclude such officers from pursuing such a course as should characterize every business transaction, whether performed individually or in a representative capacity.

6. ————: Consideration for Note. The cashier of a bank was also president of a lumber company, and at his request the defendant executed his note to the bank, to be discounted and the money used to buy certain land for the lumber company, and in turn the lumber company issued to defendant its note for a like amount to secure him against loss. The proceeds of the note were placed by the bank to the credit of the lumber company, were used in purchasing the land, and defendant received no part thereof and his note was regarded by the bank and its directors as the note of the lumber company, which later became bankrupt, but at the time its note become due was solvent, and but for the conduct and promises of the bank the defendant would have enforced the payment of the note given to him. *Held*, that these facts constituted estoppel to a suit on the note given by defendant to the bank, even against its receiver, and it was for the jury to determine their truth, the evidence being substantial.

Appeal from Dunklin Circuit Court.—*Hon. W. S. C. Walker*, Judge.

AFFIRMED.

*Orville Zimmerman* and *C. G. Shepard* for appellant.

*Ward & Reeves* for respondent.

(1) If Going gave his note directly to the bank for the purpose of procuring funds with which to buy for the lumber company the north half of Section 8, did the bank have the right to take the proceeds of this note and credit same to the account of the Pemiscot Lumber Company without the consent of Going? This question must be answered in the negative. If Going received no part of the proceeds of the note and

if he never authorized the bank to deposit the proceeds to the credit of the Pemiscot Lumber Company, then there has been a total failure of consideration. (2) If Tindle by reason of his agreement with Going, was liable to the bank, did the agreement between Cunningham, as trustee, and Tindle on July 12, 1913, taken into connection with the trust deeds of May 15th and May 30th, constitute a merger and a resultant satisfaction of the direct and indirect indebtedness of Tindle to the bank including the note sued on? This issue was submitted by the court to the jury upon instruction 4. The instruction accurately declared the law upon this issue. Ordinarily a conveyance by the mortgagor to the mortgagee of the fee in mortgaged lands results in a merger of the legal and equitable titles and the resultant satisfaction of the entire debt secured by the mortgage. 27 Cyc. 1378B; Wallen v. Huff, 5 Humph. 91; Jackson v. Evans, 44 Mich. 510; Howe v. Woodruff, 12 Ind. 214; Pearson v. Bailey, 180 Mass. 229; National Investment Co. v. Nordin, 50 Minn. 336. (3) Did the agreement between Going upon the one hand, and Reynolds and Cunningham, as agents and trustees of the bank, upon the other, that Going would surrender his claim of $6000 against the lumber company in consideration of the release of the note sued on, constitute a settlement and satisfaction of same? It is seriously contended by appellant that receivers appointed by the court are simply agents of the court and derive their power and authority to act under and in pursuance of its orders and that a receiver cannot lawfully compromise or settle a claim due the estate in litigation for less than the face value of the same without permission of the court. This is true, but if Going's contention is correct, and he had the right to have his contention submitted to the jury, then the receivers did not sacrifice any legitimate claim of the bank. If the agents of the bank, in collecting its assets acquired the capital stock of the lumber company, then that capital stock was a part of the bank assets,

charged, however, with the indebtedness of the lumber company, and if the lumber company was solvent and owed Going $6000 and Going owed the bank $6000 and the bank owned the lumber company, the situation presented was just exactly like Going says Reynolds and Cunningham declared it to be, that is, "It's as broad as it's long; if you pay us, we will have to pay you the same sum," so there was in effect no cancellation, no compromise and no settlement of an indebtedness to the bank for less than the face value of same.

WALKER, J.—The receiver of the Pemiscot County Bank brought this suit in the circuit court of that county to enforce the payment of a promissory note for $6000 made by the defendant, Going, to said bank. The answer admits the execution of the note, but pleads in defense estoppel, settlement and payment. There was a verdict for the defendant, and from the judgment rendered thereon the plaintiff appealed to the Springfield Court of Appeals, which affirmed the judgment of the circuit court. One of the judges of the Court of Appeals dissented on the ground that the majority opinion conflicted with certain rulings of the Supreme Court and certified the case here for review.

The following facts are pleaded in the answer:

The making of the note is admitted; and that when it was executed and prior thereto, one A. C. Tindle was the cashier of the Pemiscot County Bank, and was also the president of the Pemiscot Lumber Company, an Arkansas corporation. Defendant was the attorney for the Lumber Company. At Tindle's request defendant executed the note for six thousand dollars to the bank, the proceeds of same to be used in the purchase of a tract of land in Arkansas, and in turn Tindle agreed to and did execute a note for a like amount by the Lumber Company to the defendant to secure him against loss on account of the note given by him to the bank. At Tindle's request, the bank discounted defendant's

note to provide funds to purchase for the Lumber Company a half section of land in Arkansas, which was the purpose for which the note had been given. The proceeds arising from this transaction were placed by the bank to the credit of the Lumber Company, and defendant received no part of same. With these proceeds the Lumber Company paid for the land, and defendant's note was regarded by the bank as the note of the Lumber Company. Defendant was not notified by the bank that the note had not been paid and no demand was made upon him for its payment; that but for the conduct of the bank the defendant could and would have proceeded to enforce the payment of the note given to him by the Lumber Company which was then solvent, but which subsequently became bankrupt. That by reason of the foregoing facts, the bank as well as the plaintiff, its receiver, is estopped from prosecuting this cause. That in June, 1913, the Pemiscot County Bank was found to be insolvent and was taken in charge by the State Banking Department and later was placed in the hands of two of the bank's directors as trustees; that it was then discovered that Tindle, its former cashier, owed the bank large amounts of money, and in an effort to pay the same he transferred to one of the said trustees much personal and real property, among which was the stock of the Pemiscot Lumber Company; that preparatory to the conveyance of this property to the trustees for the bank, the defendant was employed by said trustees to represent the bank in said conveyance; that it was discovered that about fifteen hundred acres of land in Arkansas had been purchased by the Lumber Company, but that the deeds thereto had been taken in the name of Tindle and one Elder, and that Tindle had conveyed all of said lands to Elder and that the title to same was in him; that these lands included the half section which had been paid for with the proceeds of the note given by the defendant to the bank; that the trustees thereupon employed defendant to divest Elder of his title to said land and vest the same in trustees for

the bank, and that said service was successfully performed by the defendant. That before this was effected, defendant informed both of the trustees for the bank that the proceeds of his, defendant's, note, which is now being sued on, had been used to pay for the half section of the land for the Lumber Company, and notified them of his intention to have an equitable lien declared against said land to protect him from the payment of said note; that said land was worth, at the time, more than the amount due on said note; that the said trustees, as agents for and representatives of the bank, then and there agreed with the defendant that in lieu of the satisfaction of his note they would take, accept and receive for the bank the title to said half section of land, and in pursuance of this agreement defendant abandoned his right to enforce his lien against said land and caused the title to same to be vested in the trustees for the bank, and abandoned his right to proceed against the Lumber Company on the note given by it to him to protect him against the payment of the note sued on; that the bank after securing the title to the half section of land aforesaid by silence and acquiesence, lulled the defendant into a sense of security until after the title to the half section had been adjusted, the Lumber Company had gone into bankruptcy and the half section of land was listed as a part of the company's assets, when the bank sought to hold said land as a preferred creditor for the satisfaction of the note it is now seeking to compel the defendant to pay. That by reason of said facts plaintiff is barred and precluded in good conscience and in equity from maintaining this action.

The reply denies the new matter and asserts that the representatives of the bank did not make the agreement to release the defendant's note and if such agreement was made it was void for lack of authority, because the bank had failed and its affairs were in the hands of the State Bank Commissioner.

It was admitted that the plaintiff Trust Company was the receiver of the bank and that it sued as such.

Plaintiff introduced the note and rested. Defendant testified along the lines of and in support of his answer. In addition he introduced in evidence contracts, deeds, etc., from Tindle to one of the trustees of the bank to show that the note sued on had been paid by Tindle; Tindle's deposition was read on behalf of the defendant and supported the latter's testimony. Among other things Tindle stated that he explained the transaction in regard to the making of the two notes, to both of the trustees, as representatives of the bank, one of whom was then a director and the other the president of the bank, and told them the purpose for which the note sued on had been given by the defendant, the same being to enable him, Tindle, to secure six thousand dollars in cash for the Pemiscot Lumber Company to apply on the payment of the half section of land. Tindle's deposition corroborated the testimony of the defendant in other particulars, which if necessary to be stated in detail will be found in the opinion. The trustees denied that they had made any agreement with the defendant releasing the note sued on, but admitted that defendant assisted them in removing the cloud from the title to the half section of land to which Elder held the deed. They also denied that defendant's note was satisfied by the settlement made by them with Tindle for the bank.

I. It is contended that the circuit court erred in submitting this case to a jury. The action was at law. The defenses thereto may, to a certain extent, be equitable in form, but the interposition of an equitable defense in the absence of a prayer for affirmative relief based thereon, does not convert the action into one in equity. This ruling has been attested in numerous cases. [Hayes v. McLaughlin, 217 S. W. l. c. 264; Koehler v. Rowland, 275 Mo. l. c. 581 and cases; Toler v. Edwards, 249 Mo. l. c. 168; Lee v. Conran, 213 Mo. 404; Minor v. Burton, 228 Mo. l. c. 563.]

Jury Trial.

In the Lee-Conran case, the distinction between two classes of cases as regards the right of trial by jury is thus defined:

"If the issue joined entitle the parties to an ordinary judgment at law, then, under the Constitution and laws of the State, the parties are entitled to a trial by jury; but if the issues tendered are equitable in their nature and call for equitable relief, then the cause is triable before the chancellor."

In that case, the action was one at law. The answer among other defenses, as at bar, pleaded estoppel. This was held, in the absence of a prayer for affirmative relief, not to convert the action into one in equity.

In the Toler-Edwards case, at page 158, we said further in this regard:

"It has long been settled in this State that a purely legal action, such as ejectment, is not converted into one in equity simply by the interposition of equitable defenses thereto, unless there is a prayer for affirmative relief based on those defenses."

An epitome of the defenses pleaded in the answer will demonstrate whether any equitable right was thereby sought to be established or if a demand was made for the application of an equitable remedy. The answer alleged that the proceeds of the note had been diverted from its purpose or transferred to another without authority and that the defendant had derived no benefit therefrom; that the note was given for a specific purpose with the knowledge and approval of the bank officials, and that the Pemiscot Lumber Company was, in fact, the maker and the real beneficiary; that the note had been paid by Tindle, and if not paid, that it had been settled in the surrender by defendant to the bank of the note for a like amount which had been given to him by the Lumber Company. These were questions of fact for the determination of the jury in an action at law and we, therefore, overrule the plaintiff's contention.

II. Error is assigned in the refusal of the trial court to give a peremptory instruction to the jury to find for

the plaintiff. To have authorized an instruction of this character, it would have been necessary to have ignored substantial testimony that the note was given by defendant for a specific purpose to the bank and that the proceeds arising therefrom were not so used; and it would also have been necessary to have ignored the further proof that the note had been paid in Tindle's settlement with the bank. It will suffice to say, in view of these facts, that the seriousness of plaintiff's contention may well be questioned and we, therefore, hold that the court below ruled rightly in this regard.

*Peremptory Instruction.*

III. Complaint is made of the giving at the instance of the defendant of instruction numbered 1½, which is as follows:

"If you find from a preponderance of the evidence in this case the note sued on was executed by defendant to procure money with which to purchase the north half of Section 8, Township 4, north, of Range 7 east, in Crittenden County, Arkansas, for the Pemiscot Lumber Company, and that thereafter defendant drew a draft on said bank in favor of the owner for $4,901.67, the balance of the purchase money due him, and that defendant honestly and in good faith believed that the proceeds of his note was used by said bank to pay said draft and reimburse A. C. Tindle for one thousand dollars previously sent by him to defendant to pay on said purchase price, and if you further find from the evidence that said bank failed and its property was turned over to the State Banking Commissioner, and by him to S. P. Reynolds, as State Special Agent, and that in assembling the assets of said bank, said J. A. Cunningham, the president secured all the capital stock of said Pemiscot Lumber Company, as trustee for said bank, and that said Cunningham, as trustee, and Reynolds, as State Agent, discovered that the title to a large body of land belonging to said Lumber

*Instruction.*

Company had been conveyed to W. E. Elder, the secretary of said company, and that said Reynolds, as special agent, and Cunningham, as president of said bank, sought the services of defendant to divest the title to said land out of said Elder and vest it in said Lumber Company, and that thereupon said defendant informed said Reynolds and Cunningham that if they, as the representatives of said bank, insisted that he was liable to said bank upon the notes sued on, he, the defendant, would undertake to subject said north half of Section 8, Township 4, north, Range 7 east, to the payment of same; and if you further find from the evidence that it was agreed between the parties that if defendant did release his claim to said land and recover said land for said Lumber Company, said bank would release defendant from liability on said note, *or if you believe from the evidence that said Reynolds and Cunningham as the agents of said bank by their acts, words or conduct led defendant to believe that if he did release his claims to said land and recover the same for said Lumber Company,*

Estoppel. *the Pemiscot County Bank would release defendant on said note, and said defendant relying thereon released his claim against said land and Lumber Company and recovered said land for said Lumber Company, then your verdict should be for the defendant.''*

It is to the italicized portion of this instruction to which particular objection is made.

An instruction was given at the request of the plaintiff submitting the issue of the agreement embodied in the foregoing instruction of defendant; plaintiff's instruction, however, does not embrace the defense of estoppel, which is submitted in the italicized portion of defendant's instruction; there is no rule of law or equity which precludes the right of the defendant to thus interpose this defense in the manner in which it is made under the facts at bar, and so far as this objection to the instruction goes, it must be held to be without merit.

Defendant's instruction above set forth, as well as instruction numbered 2 given at his instance, are similar in purport. They deal with the question of the contract or agreement made between the defendant on the one hand and the trustees as agents of the bank on the other, in which defendant contends that he agreed to and did surrender his claim of six thousand dollars against the Lumber Company in consideration of a release by the bank of the note sued on. It is the contention of the plaintiff that although the making of this agreement be conceded, that the parties with whom it was made, namely, the trustees were appointed by the court, and were simply its agents with no power to act except in pursuance of its order, and hence, that they were not authorized to compromise or settle a claim due the bank for less than its face value without the permission of the court. The correctness of this rule under a state of facts supporting same cannot be gainsaid; but if the defendant's testimony is to be believed and his right to have it submitted to the jury cannot be questioned, then the trustees did not in this settlement sacrifice any legitimate claim due the bank. If as agents of the bank in collecting its assets the trustees acquired the capital stock of the Pemiscot Lumber Company, then that stock became a part of the bank's assets, charged, however, with the indebtedness of the Lumber Company, and if the latter was solvent and owed the defendant six thousand dollars and the defendant owed the bank a like amount and the bank owed the Lumber Company, the situation presented was, as the defendant states the trustees declared it to be, viz.: "as broad as it was long;" in that if defendant paid the trustees, they in turn would have to pay him a like sum. This being true there was, so far as this record discloses, neither a cancellation, compromise nor settlement of an indebtedness to the bank for less than the face value of same and, hence, the rule invoked as to the limitation of the power of the representatives of the bank can have no application here.

*Settlements by Court Trustees.*

While courts require those who deal with their officers to take notice of the limitation which the law places upon their powers, this does not preclude such officers from pursuing such a course as should characterize every business transaction, whether performed individually or in a representative capacity. If the facts are, as the defendant declares them to be, judicial sanction should not be given to the course pursued by the representatives of the bank in this matter.

We do not desire to, nor will we draw any invidious distinctions between the testimony of the respective parties hereto, further than our rules of procedure require, in that we will recognize the superior probative force of any substantial testimony, the verity of which has been approved by the jury. The jury, well within their province, have determined to give credence to the testimony of the defendant rather than that of the representatives of the bank. A summary of the defendant's testimony, corroborated by that of the witness Tindle is, that by reason of the representations of the trustees, defendant was caused to lose his right to secure from the assets of the Lumber Company the amount it owed him equal to that of the face of his note given to the bank; that the course pursued by the trustees prevented defendant from enforcing an equitable lien upon the half section of land owned by the Lumber Company. While this course of conduct was, no doubt, pursued in an effort to enlarge the bank's assets and with no desire to limit the rights of the defendant, it nevertheless had this effect and in the face of the record this course does not meet with our approval.

The giving of instruction numbered 4 at the instance of the defendant is assigned as error. It is as follows:

"The court instructs the jury that if you find and believe from the evidence in this case that the said A. C. Tindle and wife executed a deed of trust to and in favor of J. A. Cunningham as trustee for the Pemiscot County Bank upon all of the property which the said

A. C. Tindle owned, reserving the right to use said property and collect the rents and profits for a period of a year; and if you find and believe from the evidence in this case that subsequently said A. C. Tindle conveyed his entire interest, including the rent, in said land, for the consideration of the release, settlement and satisfaction of all indebtedness which the said A. C. Tindle owed said bank, either directly or indirectly; and if you further find and believe from the evidence that the indebtedness sued on herein was included in said release, settlement and satisfaction and that said bank accepted and received said property and retained same, then you are instructed that said debt has been paid and that the plaintiff cannot recover in this case.''

*Estoppel.*

This instruction is based on the testimony of Tindle who stated that the rents and profits of his mortgaged property was of the value of ten thousand dollars per year, and at the time of his release of the equity of redemption he was entitled to collect rents and profits for ten months, amounting to about eight thousand dollars, which he surrendered when he entered into the release, settlement and satisfaction of all of his indebtedness to the bank, directly or indirectly, as shown in a written instrument signed by Tindle and Cunningham, one of the trustees, on July 12th, 1913. The witnesses for the plaintiff denied the truth of this statement, but the jury gave credence to the testimony of Tindle. It was upon this testimony that the above instruction was given. It simply told the jury that if Tindle released his equity in consideration of the settlement and satisfaction of his indebtedness to the bank, directly or indirectly, and that the indebtedness sued on was included in that settlement and the bank accepted and received the property and retained it, then the debt sued on had been paid.

Ordinarily, a conveyance by a mortgagor to a mortgagee of the fee in mortgaged lands results in a merger of the legal and equitable titles, and in the resultant satisfaction of the entire debt secured by the

mortgage. [27 Cyc. 1378-9 and cases cited.] This result, it may be conceded, is dependent in many cases upon the evidence as to intention of the parties at the time the equity is conveyed. The jury in believing Tindle evidently found that when he executed the deed to the representatives of the bank, he had an equity or interest in the property to the extent of eight thousand dollars; and that he surrendered this interest in consideration of a complete settlement and satisfaction of his direct and indirect indebtedness to the bank, including, as he stated, the note sued on. There was, to say the least, substantial evidence upon which to base such a finding and hence the instruction was not error. The defendant's right to a verdict, however, in view of his other defenses, pleaded and proved, need not be made to depend on this instruction; and its discussion is pertinent if for nothing more than to show that its giving did not constitute error authorizing a reversal.

IV. It is contended that the testimony was not sufficient to authorize the submission of the defense of estoppel to the jury. Tindle, the former cashier of the bank, testified that at the time the defendant's note to the bank was discounted, he explained to the president and one of the directors, who are the trustees representing the receiver in this suit, the purpose for which the note was given and the reason he desired it discounted; that the defendant was not then, nor had he ever been, a patron of the bank; that he (Tindle) told these officials that the money was to be used in the purchase of the half section of Arkansas land for the Pemiscot Lumber Company, and that the note was discounted by them for the bank with full knowledge at the time of all of these facts; that they knew that the defendant was not the beneficiary in the transaction, and that the Lumber Company was to pay the note when it became due. These facts are denied by the trustees, but the jury believed, as they had a right to do, Tindle's testimony. Aside from our duty to accept the finding by the jury

*Sufficient Evidence.*

of the facts when supported by any substantial evidence, we are not inclined when we take into consideration the entire atmosphere of this case to question the correctness of the jury's finding in this regard. If, therefore, Tindle's testimony be true, then the bank could not at law have enforced the payment of this note by the defendant, and the plaintiff by reason of its appointment and authority as receiver could not acquire any greater rights or power to assemble or collect the assets of the bank than that possessed by its directors. This is elementary and the citation of authorities is unnecessary to sustain this conclusion.

V.    Error is assigned in the refusal of certain instructions asked by the plaintiff. Instruction numbered 5 was properly refused because it omitted, **Omitted Defense.** in hypothesizing the facts, any reference to the specific purpose for which the defendant gave the note sued on.

Instruction numbered 7 told the jury that if the draft issued by the defendant in favor of the party who held the title to the half section of Arkansas land in payment of the purchase price of same was paid out of funds of the bank and not derived from the proceeds of **Purpose of Note.** the defendant's note, then the defendant had no such interest in the land as would give him a lien thereon. Thus framed, the instruction was incorrect, in that it eliminated from the consideration of the jury the question as to whether or not the proceeds of the defendant's note had been diverted from the purpose for which it had been made. There was certainly no authority for the giving of this instruction in the face of the fact that the defendant had not directed any other disposition of the proceeds of the note, except in payment of the purchase price of the land.

Instruction numbered 7½ told the jury that if the directors of the bank had no knowledge that defendant's **Notice.** note was held by the bank, then they were not required to notify him that it had not been paid

and that plaintiff is not estopped by reason of this failure of notice. This instruction stated no contested issue and was based upon no contention made during the trial; the only possible relevancy of any statement in regard to a lack of notice which appears in the record was a circumstance incidentally to show that the note was not regarded as an obligation of the defendant due the bank. The fact that it was thus shown, constituted no issue authorizing the requested instruction.

Instructions numbered 8 and 9, refused, did not involve any issues presented by the testimony and hence need not be considered.

, Instruction numbered 10, requested by the plaintiff, was as follows: "The Court instructs the jury that if you believe and find from the evidence that the Pemiscot County Bank had been placed in the hands of the Bank Commissioner of the State of Missouri prior to the time defendant alleges the contract was entered into between defendant and J. A. Cunningham and S. P. Reynolds, by the terms of which defendant was relieved from paying said note, then you instructed the said J. A. Cunningham and S. P. Reynolds had no authority to make such contract on behalf of the Pemiscot County Bank, and had no authority to relieve defendant or any one else of their obligations to said bank, and you cannot find for the defendant by reason of such contract, even should you believe such contract was made and entered into between the parties." This instruction ignores material facts upon which the defendant based his defense and hence was properly refused. The conclusion of the law arising from that statement of facts is incorrect as applied to the instant case. There was no evidence that the representatives of the bank relieved the defendant or any one else of their obligations due the bank; in their settlement with defendant they received full consideration or payment of his note in causing him to release to the bank the obligation of the Pemiscot Lumber Company.

*Contract With Trustees.*

In view of all of which we are of the opinion that the plaintiff has suffered no substantial injury in the refusal of the instructions above referred to.

A careful review of the entire record discloses no rulings in regard to the admission or exclusion of testimony which materially affected the rights of the plaintiff.

VI.   In this case, as in Young v. Glascock, 79 Mo. 574, leave was given the defendant to amend so as to admit proof of payment. The amendment was not made at the time in either case. In the Young-Glascock case the court subsequently refused to permit the amendment on the ground that it was unnecessary, and there, as here, proof was offered as if the amendment had been made. In the instant case the amendment was not later made, but the court in its instructions proceeded as though it had been. The amendment proposed was material and the proof offered was relevant. In the Young-Glascock case we held in furtherance of justice that we would treat the case as though the amendment had actually been made, instead of refused by the trial court. We see no reason why the same rule should not apply in the case at bar, although the amendment was probably inadvertently omitted. This being true there is no conflict between this case and that of Young v. Glascock and cases to like effect. [Underwood v. Bishop, 67 Mo. 374; Shantz v. Shriner, 167 Mo. App. 635; Locke v. Bowman, 168 Mo. App. 121.]

. While it is true, as a general rule, that in an ordinary money demand, the fact of payment is in the nature of new matter and by our code inadmissible under a simple denial (Wilkerson v. Farnham, 82 Mo. 672 and later cases), this rule cannot be held applicable under the facts here, in view of its modification as approved in the Young-Glascock case. There is, therefore, no conflict between the case at bar and that of Wilkerson v. Farnham. We have elsewhere disposed of this question of conflict in holding that there was no error in the giv-

ing of the instruction by the court in regard to payment, and that the defendant was entitled to recover on other grounds.

A careful review of all the facts demonstrates to our satisfaction that the judgment was for the right party. Finding no error authorizing a reversal it is, therefore, affirmed. All concur.