Walter F. Sheehan and Johanna Sheehan v. Commissioner.
Sheehan v. Commissioner
Docket No. 21485.
United States Tax Court
1950 Tax Ct. Memo LEXIS 187; 9 T.C.M. (CCH) 436; T.C.M. (RIA) 50138; June 2, 1950
*187 Don O. Russell, Esq., 408 Olive St., St. Louis, Mo., for the petitioners. Marvin E. Hagen, Esq., for the respondent. JOHNSON
Memorandum Findings of Fact and Opinion JOHNSON, Judge: Respondent determined a deficiency in income tax for the calendar year 1944 in the amount of $3,016.42. By amended answer, filed pursuant to leave granted at the hearing, respondent asks that the deficiency be increased to the amount of $5,095.17. The sole question is the amount of petitioners' gain from the sale in 1944 of property located at Kingshighway and Fyler Avenue, in St. Louis, Missouri. Other issues raised by the petition were abandoned by petitioners at the hearing. Findings of Fact The petitioners are individuals, husband and wife, residing at 8039 South Drive, Hampton Park, St. Louis, Missouri. They filed their joint income tax return for the period herein involved with the collector of internal revenue for the first district of Missouri, at St. Louis, Missouri. Walter F. Sheehan (hereinafter referred to as petitioner) has been engaged in the real estate business in St. Louis, Missouri, for over 30 years. During 1937 and prior thereto he and his wife owned all of the *188 outstanding capital stock of Geneva Investment Company. In 1924 or 1925 the Geneva Investment Company acquired unimproved real estate located at Kingshighway and Fyler Avenue in St. Louis, Missouri. Prior to 1937 the property was improved and a warehouse was constructed on the property. Prior to March 5, 1937, the Geneva Investment Company owned approximately one-half million dollars worth of property. Petitioner owned the Walter F. Sheehan Realty Company. Prior to the year 1937 the Walter F. Sheehan Realty Company was dissolved, whereupon petitioner took over all the assets and liabilities of said company and has done business as the Walter F. Sheehan Realty Company in an individual capacity since that time. On December 31, 1936, the Geneva Investment Company owed the Walter F. Sheehan Realty Company the sum of $152,965.92 and petitioner personally $15,350.44. On March 5, 1937, petitioner acquired from the Geneva Investment Company the property at Kingshighway and Fyler Avenue. The books of the Walter F. Sheehan Realty Company showed a credit to the account of Walter F. Sheehan on March 5, 1937, of the Kingshighway and Fyler Avenue property at a cost of $9,059.74, and a credit *189 to the account of the Geneva Investment Company on March 5, 1937, for the Kingshighway and Fyler Avenue property in the amount of $9,059.74. These books also showed deeds of trust on this property on that date in the amount of $10,000. These books also showed the transfer of other properties from the Geneva Investment Company to Walter F. Sheehan on March 5, 1937, and credits to the account of the Geneva Investment Company in various amounts therefor. The Geneva Investment Company went into involuntary bankruptcy in 1940. Petitioner did not file a claim in the bankruptcy proceeding. The records of the Geneva Investment Company in connection with its properties and petitioner's own records concerning these properties were turned over to the trustee in bankruptcy and have been unobtainable by petitioner since that time, except for memoranda and trial balances. The trial balance of the Geneva Investment Company for December 31, 1936, carried the Kingshighway and Fyler Avenue property at a cost after depreciation charged of $9,059.74. At the time the Kingshighway and Fyler Avenue property was acquired by petitioner it was encumbered by a first deed of trust in the amount of $7,500, *190 which was paid off November 27, 1944, and by a second deed of trust in the amount of $2,500, which was in favor of petitioner. In 1939 improvements were added to the property at a cost of $1,799.64. On November 27, 1944, a special assessment tax of $1,501.46 was paid to the City of St. Louis for street and sidewalk improvements. The 1943 income and victory tax return of petitioners showed prior depreciation taken on the building at Kingshighway and Fyler in the amount of $2,802.98 and depreciation for 1943 in the amount of $145.91. The 1944 return showed prior depreciation taken on the building in the amount of $949.39 and depreciation for 1944 in the amount of $132.88. The estimated life of the building was stated on the 1944 return as 50 years. The building costs were stated as $7,359.38, the land costs at $7,501.46. The date acquired was stated as 1937. In their joint income tax return for 1944 the petitioners reported gain from the sale of the property located at Kingshighway and Fyler Avenue as follows: Cost
Sale Price
Sale of Kingshighway and
Fyler property
$14,593.75
Adjustments for taxes and
interest
133.29
$14,727.04
Cost
$ 9,059.74
Alterations
1,799.64
Miscellaneous costs
38.98
Special tax assessments
1,501.46
2nd deed of trust
2,500.00
$14,899.82
Depreciation taken
1,082.27
13,817.55
Gain
$ 909.49
*191 The respondent computed the gain on the sale of the property in question as shown in the revenue agent's report for the year ending December 31, 1944, as follows: Sales price 11/27/44
$14,593.75
Plus: Adjustments for
taxes and interest
133.29
Total sales price
$14,727.04
Cost 3/5/37
1st deed of trust
$ 7,500.00
2nd deed of trust
2,500.00
Alterations and im-
provements
1,799.64
Miscellaneous costs of
sale
38.98
Special assessment (city)
1,501.46
Total cost
$13,340.08
Less depreciation since ac-
quisition 11/27/44
1,082.27
12,257.81
Gain on sale
$ 2,469.23
In his amended answer respondent computed the gain on the sale of the property in question as follows: Sale price - 11/27/44
$14,593.75
Plus: Adjustment for taxes
and interest
133.29
$14,727.04
Cost -
Alteration and improve-
ments
$ 1,799.64
Miscellaneous costs of
sale
38.98
Special assessment (city)
1,501.46
First deed of trust
7,500.00
$10,840.08
Less depreciation allowable to date
of sale -
Prior to 1943
$2,802.98
1943
145.91
1944
132.88
3,081.77
7,758.31
Corrected gain
$ 6,968.73
Petitioner realized *192 gain on the sale of the property in question in the amount of $909.49 as reported and computed in petitioners' joint income tax return for 1944. (See above.) Opinion In the last paragraph of our findings we have set forth our finding that petitioner Walter F. Sheehan (referred to throughout as petitioner) realized gain on the sale in 1944 of certain property located at Kings-highway and Fyler Avenue in St. Louis, Missouri, in the amount of $909.49, as reported and computed in petitioners' joint income tax return for 1944. The amount of that gain is the sole issue in this proceeding. Respondent maintains that: "* * * If the Court should find that the property was encumbered by a $2,500.00 second deed of trust on March 5, 1937, it should not be included in the unadjusted basis of the property since the $2,500.00 second deed of trust was in favor of Walter F. Sheehan, one of the petitioners in this case. The petitioner, as creditor, could not assume an obligation owing to himself or pay off another's obligation to himself and thereby increase the cost basis of his property." However, we have found that the $2,500 second deed of trust was properly added by petitioners to the *193 cost in the determination of gain or loss. In Missouri "ordinarily a conveyance by a mortgagor to the mortgagee of the fee in the mortgaged land results in a merger of the legal and equitable titles and results in the satisfaction of the entire debt secured by the mortgage", but the matter rests in many cases on the intention of the parties. Citizens' Trust Co. v. Going, 288 Mo. 505; 232 S.W. 996, 1000. We have no evidence of the intention of the parties here. But if merger of the $2,500 second deed of trust in favor of petitioner and satisfaction of the debt did take place upon his acquisition of the fee, then clearly that acquisition cost petitioner a secured obligation owing to him in the amount of $2,500 and that amount should be added to his cost basis for the property. If merger did not take place, then the encumbrance remained against the property, petitioner assuming it, even though owing to himself. Therefore, that assumption benefited the seller, the Geneva Investment Company, by the amount of the encumbrance and correspondingly increased the basis of the property to the buyer, petitioner. Crane v. Commissioner, 331 U.S. 1. Under *194 either theory, then, the amount of the $2,500 second deed of trust should be added to the basis of the property. We have found that the cost of the property alone, exclusive of other additions to basis, to petitioner at the time of its acquisition on March 5, 1937, was $9,059.74. Respondent, however, takes the position that the property was acquired by petitioner in satisfaction of debts owing to him from the Geneva Investment Company totaling $168,316.36 and that the basis of the property so acquired is its fair market value at the date of acquisition. He maintains that petitioners have failed to establish any fair market value of the property at the time of its acquisition in excess of the first deed of trust in the amount of $7,500. We do not agree. There is no evidence that this property was acquired by petitioner in satisfaction of the debt of $168,316.36. In fact, the books of the Walter F. Sheehan Realty Company, under the name of which petitioner did business in an individual capacity in 1937, show a credit to his account on March 5, 1937, of the property at a cost of $9,059.74 and a credit to the account of the Geneva Investment Company for the property in the amount of *195 $9,059.74. These entries, plus others of the same date showing the transfer of other properties from the Geneva Investment Company to petitioner on that date and credits to the account of the Geneva Investment Company in various amounts therefor, are evidential that the property was not transferred to petitioner in satisfaction of the debt of $168,316.36, but at a cost of $9,059.74. Book entries constitute evidence of a transaction. Corn Exchange Bank, 6 B.T.A. 158. Moreover, petitioner's uncontradicted testimony was that he credited the Geneva Investment Company on amounts due him with "$9,059 and some cents" in taking over the property. Petitioner's basis, therefore, in the property is its cost to him, i.e., the amount of his credit he used in acquiring it, $9,059.74, not its fair market value at the time of acquisition. Aleda N. Hall, 9 T.C. 53. As a matter of fact, the book value of the property on the balance sheet of the Geneva Investment Company for December 31, 1936, was $9,059.74, and such book values, though not conclusive, are evidence of fair market value. Wessel v. United States (C.C.A., 8th Cir., 1931), 49 Fed. (2d) 137. But since, *196 as indicated, we hold that the unadjusted basis of the property to petitioner was its cost to him, not its fair market value at the date of acquisition, no determination of the fair market value is necessary. Respondent, finally, contends that in arriving at the adjusted basis of the property at the date of sale in 1944 for the purpose of determining gain or loss on the sale, the unadjusted basis must be reduced by depreciation allowable to the date of sale in the amount of $3,081.77. This issue was first raised by respondent in his amended answer and therefore the burden as to it is on respondent. He arrives at this figure by adding to the figure of $2,802.98, which appeared as "prior depreciation" on the property on petitioners' 1943 return, the amounts of depreciation of $145.91 and $132.88 taken by petitioner in 1943 and 1944. Petitioners, however, maintain that the total amount by which the basis of the property should be reduced by depreciation allowable to the date of sale is $1,082.27. They arrive at this figure by adding to the figure of $949.39, which appeared as "prior depreciation taken" on their 1944 return, the amount of depreciation of $132.88 taken in 1944. We *197 are thus met by a discrepancy in the amount of depreciation prior to 1944 reported by petitioners on their 1943 and 1944 returns. We think that the figure in the 1944 return was the correct one, and that respondent has not met his burden of showing that it was wrong. Therefore we have found, as contended for by petitioners, that the total depreciation allowable to the date of sale was $1,082.27. We think that the figure of $2,802.98 appearing on the 1943 return as "prior depreciation" may possibly be explained on the ground that petitioners may have mistakenly included in that figure the depreciation taken on the property prior to its acquisition by petitioner in 1937. By simple arithmetic it will be seen that if between acquisition in 1937 through 1942 the depreciation taken was actually $2,802.98, as respondent contends, then the yearly depreciation would be $467.16, or $23,358 for a 50-year life of the building alone, a figure far in excess of the unadjusted basis of the whole property claimed by either of the parties. Whereas if from 1937 through 1943 the depreciation taken was $949.39, as petitioners contend, then the yearly depreciation would be $135.63, a figure closely approximating *198 the actual deductions taken for depreciation in 1943 and 1944, and would amount to $6,781.50 for a 50-year life for the building, making possible either of the figures for unadjusted basis for the ground and building claimed by the parties. Petitioners in their reply brief allege for the first time that respondent erred in not determining the gain from the sale under section 117(j), Internal Revenue Code, as gain from the sale of a capital asset held for more than six months. However, that section specifically excepts from its coverage "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business." This was a sale of real estate and petitioner has been engaged in the real estate business for over 30 years. Petitioners have not shown that respondent erred in not determining the gain from the sale under section 117(j). Decision will be entered under Rule 50.