*Decisions will be entered under Rule 50.*

JOHN L. HAWKINSON, LAURA W. HAWKINSON, HUSBAND AND WIFE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 47392. Filed February 28, 1955.

*John S. Murtha, Esq.*, for the petitioners.
*William T. Kane, Esq.*, for the respondent.

OPINION.

TIETJENS, *Judge:* Respondent determined a deficiency of $41,377.24 in income tax for the year 1948.

Petitioners assign error in respondent's determination that the discharge of an indebtedness of Laura W. Hawkinson (hereafter called petitioner) to the Whitney Chain & Mfg. Company (hereafter called Whitney Chain) was taxable as a dividend. A deduction with respect to medical expenses depends upon resolution of the main issue.

The facts have been stipulated and the stipulation is adopted and included herein by reference.

Petitioners are husband and wife. They filed their return for 1948 with the collector of internal revenue for the district of Connecticut.

Whitney Chain was incorporated in 1906 under the laws of Connecticut and since that time has maintained its plant and home office in Hartford, Connecticut. Its authorized capital stock from incorporation up to and including February 2, 1948, was 15,000 shares of common stock of a par value of $100 per share.

On February 2, 1948, and prior thereto, the capital stock of Whitney Chain was owned and held as follows (the individuals named below being sometimes hereinafter referred to collectively as the Whitney family):

| | Shares |
|---|---|
| Nellie Hurlburt Whitney | 3,817 |
| Laura Whitney Hawkinson | 2,293 |
| Dorothy Whitney Stevens | 2,295 |
| Winthrop H. Whitney | 751 |
| Lawrence A. Whitney | 2,145 |
| Treasury shares | 3,693 |
| Directors' qualifying shares | 6 |
| Total | 15,000 |

Nellie Hurlburt Whitney is the widow of Clarence E. Whitney, the founder of Whitney Chain. Laura Whitney Hawkinson, Dorothy Whitney Stevens, Winthrop H. Whitney, and Lawrence A. Whitney are children of Clarence E. Whitney. The treasury stock was purchased by Whitney Chain for cash from Nettie Whitney Opdyke, sister of Clarence E. Whitney, in 1936.

The Hanson Tap and Gauge Company (hereafter called Hanson Tap and Gauge) was a corporation incorporated in 1920 under the

laws of the State of Connecticut and had its plant and home office in Hartford, Connecticut. Hanson Tap and Gauge had only one class of stock, namely common stock.

The Hanson-Whitney Machine Company (hereafter called Hanson-Whitney) was incorporated in 1919 under the laws of Connecticut and since that time has had its plant and home office in Hartford, Connecticut, on property adjoining that of Whitney Chain. Its original authorized capital stock was 1,000 shares. In 1939 a stock dividend was issued of 6 shares of common on each outstanding share thus increasing its outstanding shares of common stock to 7,000.

Hanson-Whitney's outstanding stock at February 2, 1948, and prior thereto was owned and held as follows:

```
Whitney Chain_____ 5, 246
Einar A. Hanson_____   879
Svea H. Hanson_____    871
Directors' qualifying shares_____      4
                                                           _____
    Total _____ 7, 000
```

On February 2, 1948, and prior thereto, the officers and directors of Whitney Chain and Hanson-Whitney and their ownership of stock of said corporation were as follows:

### Whitney Chain

| Name | Office | Director | Shares owned |
|------|--------|----------|--------------|
| Winthrop H. Whitney | President | Yes | 751 |
| Charles H. Sweet | Vice president | No | 0 |
| Einar A. Hanson | | Yes | 1 |
| Park C. Boyd | Secretary | Yes | 1 |
| Leon B. Reed | | Yes | 1 |
| G. F. Gilmore | Treasurer | No | 0 |
| Robert E. Carroll | | Yes | 1 |
| Roger E. Gay | | Yes | 1 |
| Wilbur C. Stauble | | Yes | 1 |
| Thomas Hewes | | No | 0 |
| | | | 757 |

### Hanson-Whitney

| Name | Office | Director | Shares owned |
|------|--------|----------|--------------|
| Winthrop H. Whitney | Treasurer | Yes | 1 |
| Charles H. Sweet | | | |
| Einar A. Hanson | President | Yes | 879 |
| Park C. Boyd | Secretary | Yes | 1 |
| Leon B. Reed | Vice president | Yes | 1 |
| G. F. Gilmore | | No | 0 |
| Robert E. Carroll | | No | 0 |
| Roger E. Gay | | No | 0 |
| Wilbur C. Stauble | | No | 0 |
| Thomas Hewes | | Yes | 1 |
| | | | 883 |

Whitney Chain and Hanson-Whitney, except for common officers and directors, were separate organizations. Both corporations were engaged in the manufacture and sale of metal products.

Hanson-Whitney, as originally constituted, was organized by Clarence E. Whitney and B. M. W. Hanson. Clarence E. Whitney then, and until his death in 1933, was president and principal stockholder of Whitney Chain.

Clarence E. Whitney died on January 22, 1933, at which time he owned directly or indirectly substantial interests in Whitney Chain, Hanson-Whitney, and Hanson Tap and Gauge.

In 1933, after Clarence E. Whitney's death, Hanson-Whitney and Hanson Tap and Gauge were unable to meet their debts which were chiefly to the Estate of B. M. W. Hanson, to Whitney Chain, and to Clarence E. Whitney. An arrangement was worked out whereby the two corporations were merged to become known as The Hanson-Whitney Machine Company (Hanson-Whitney) and the stock of Hanson-Whitney was issued 75 per cent to Whitney Chain and 25 per cent to Hanson's heirs. This distribution of the stock was roughly in proportion to the debts and interest owed as aforesaid by Hanson-Whitney and Hanson Tap and Gauge. The result of this merger was that Whitney Chain received 750 shares out of 1,000 shares of the stock issued by Hanson-Whitney and the stock interests of Clarence E. Whitney in Hanson-Whitney and Hanson Tap and Gauge were extinguished. For bookkeeping purposes, the eliminated debts amounting to approximately $587,000 were set up as capital surplus of Hanson-Whitney.

At his death, Clarence E. Whitney was indebted to Whitney Chain. During the course of administration his estate borrowed funds from Whitney Chain. The indebtedness owing to Whitney Chain by the estate at the time it was closed was as follows:

| | Principal | Interest | Total |
|---|---|---|---|
| Borrowed by Clarence E. Whitney ------------------------- | $143,050 | $28,846 | $171,896 |
| Borrowed by Estate of Clarence E. Whitney----------------- | 104,500 | 6,524 | 111,024 |
| Total estate indebtedness to Whitney Chain----------------- | $247,550 | $35,370 | $282,920 |

As part of the settlement of the Estate of Clarence E. Whitney, a novation was effected by an agreement dated December 1938 between the estate, the heirs, and Whitney Chain whereby Whitney Chain acquiesced in the heirs' pro rata assumption of the estate's indebtedness to it upon the transfer to the heirs by the estate of the total amount of stock held by the estate. By agreement dated as of March 29, 1939, the heirs of Clarence E. Whitney readjusted their proportionate stock ownership and share of indebtedness. After such

adjustment and until February 2, 1948, petitioner owned 2,293 shares of the stock of Whitney Chain. After such adjustment her assumed indebtedness was $56,584. In addition, she had previously borrowed from Whitney Chain $13,500. As of February 2, 1948, petitioner's indebtedness had been reduced to $67,500.

The value of the stock of Whitney Chain at the time of Clarence E. Whitney's death was $120 per share.

On December 8, 1947, all of the shareholders of Whitney Chain and all of the shareholders of Hanson-Whitney entered into an agreement to vote their shares in favor of the consolidation of the two corporations in accordance with a plan of statutory consolidation. The agreement was conditioned, *inter alia*, on the part of Svea A. Hanson and Einar A. Hanson, holders of 25 per cent of the stock of Hanson-Whitney, on the agreement of the holders of the stock of Whitney Chain that their (the Whitney family's) indebtedness to Whitney Chain be canceled.

On December 8, 1947, Whitney Chain and Hanson-Whitney entered into a written agreement of consolidation. The agreement provided, *inter alia*, for the discharge and cancellation of the indebtedness of Whitney Chain's shareholders to the corporation.

Pursuant to the aforesaid agreements, Whitney Chain and Hanson-Whitney were consolidated into a new corporation known as Whitney-Hanson Industries, Incorporated. The consolidated corporation took over the assets and assumed the liabilities of both corporations with the exception of the indebtedness of the petitioner and other stockholders of Whitney Chain to that corporation totaling in all $326,119.20. Petitioner's share of indebtedness canceled was $67,500. The indebtedness canceled was charged to the surplus of Whitney Chain as part of the plan of consolidation. Thereafter the said two corporations operated as divisions of the new corporation.

Pursuant to the aforesaid agreements, the stock of Whitney Chain and Hanson-Whitney was surrendered by the respective shareholders and stock of the resulting consolidated corporation was issued as follows:

| | Surrendered | | Issued—Whitney-Hanson Industries, Inc. |
| --- | --- | --- | --- |
| | Whitney Chain | Hanson-Whitney | |
| Nellie Hurlburt Whitney | 3,817 | | 55,862 |
| Dorothy Whitney Stevens | 2,295 | | 34,074 |
| Laura Whitney Hawkinson | 2,293 | | 33,524 |
| Winthrop H. Whitney | 751 | 1 | 10,233 |
| Lawrence A. Whitney | 2,145 | | 31,703 |
| Whitney Chain | | 5,246 | |
| Einar A. Hanson and Svea H. Hanson | 1 | 1,750 | 34,598 |
| Qualifying shares | 5 | 3 | 6 |
| Totals | 11,307 | 7,000 | 200,000 |

Based on the book equities of both Whitney Chain and Hanson-Whitney combined, Einar A. Hanson and Svea H. Hanson would have received approximately 10.88 per cent of the consolidated corporation's stock had not the loan receivable due from stockholders been charged off on Whitney Chain's books. Based on the book equities of both Whitney Chain and Hanson-Whitney, combined, Einar A. Hanson and Svea H. Hanson would have received approximately 11.63 per cent of the consolidated corporation's stock had the loan receivable due from the stockholders been charged off on Whitney Chain's books prior to consolidation. However, pursuant to the agreement of the stockholders and in consideration of the charge-off of said indebtedness and/or other considerations, approximately 17.3 per cent of the consolidated corporation's stock was issued to Einar A. Hanson and Svea H. Hanson. This was accomplished by a transfer to the Hansons of a corresponding decrease of 6.416 per cent in the Whitney family share. Thus the Whitney family received 165,400 shares and the Hansons 34,600 shares of stock of the new corporation.

Among the other considerations referred to in the preceding paragraph were the following:

(a) The Whitney interests wished to retain the services of Einar A. Hanson in the consolidated corporation.

(b) Under section 1132e of the Connecticut General Statutes, 1937 supplement (now section 5225 of the Connecticut General Statutes, revision of 1947) which statutory section was in force at the time of the consolidation of Whitney Chain and Hanson-Whitney, any stockholder in a consolidating corporation objecting to such consolidation could compel the purchase for cash of such stockholder's shares of stock by the resulting corporation. The cash position of the two consolidating corporations was such that the Whitney interests did not wish the Hanson interests to avail themselves of this privilege.

(c) The Hanson interests considered that the prior earning record of each corporation on a comparative basis justified a higher valuation for the stock of Hanson-Whitney than a valuation based entirely on book value.

The cancellation of the indebtedness of the petitioner and of the other stockholders of Whitney Chain was an integral part of the plan to consolidate the corporation with Hanson-Whitney.

The fair market value of the stock of the new corporation as of the date of consolidation was not less than $10.50 per share.

In determining how the stock should be distributed to the various stockholders of Whitney Chain, it was decided that the method to be used would be to have each contribute to the shares given up to the Hansons proportionately based on the percentage of his individual indebtedness canceled.

Net assets of Hanson-Whitney and Whitney Chain before and after debts were written off were as follows:

Hanson-Whitney
Capital stock Jan. 31, 1948_____ $700,000.00
Surplus Jan. 31, 1948_____ 1,556,309.62    $2,256,309.62

Whitney Chain
Capital stock Jan. 31, 1948_____ $1,130,700.00
Surplus Jan. 31, 1948_____ 2,502,994.89    3,633,694.89

Total capital and surplus_____ $5,890,004.51
Less: Whitney Chain's investment in Hanson-Whitney's
capital stock (5,246 shares)_____    381,867.51

Total net capital and surplus_____ $5,508,137.00
Less: Loans receivable charged to surplus_____    326,119.20

$5,182,017.80

Whitney-Hanson Industries, Incorporated
Capital stock Feb. 1, 1948_____ $2,000,000.00
Surplus Feb. 1, 1948_____ 3,182,017.80    $5,182,017.80

The dividends paid by Whitney Chain and Hanson-Whitney for the years 1938–1947, inclusive, and by the consolidated corporation, Whitney-Hanson Industries, Incorporated, for the year 1948 were as follows:

*Statement of Dividends Paid by The Hanson-Whitney Machine Company*

| Year | Shares outstanding | Per share | Total dividend | Year | Shares outstanding | Per share | Total dividend |
|------|-------------------|-----------|----------------|------|-------------------|-----------|----------------|
| 1938_____ | 1,000 | $75.00 | $75,000 | 1943__ _____ | 7,000 | $17.00 | $119,000 |
| 1939_____ | 1,000<br>7,000 | 37.50<br>14.50 | 139,000 | 1944_____ | 7,000 | 14.00 | 98,000 |
| | | | | 1945_____ | 7,000 | 14.00 | 98,000 |
| 1940_____ | 7,000 | 22.00 | 154,000 | 1946_____ | 7,000 | 14.00 | 98,000 |
| 1941_____ | 7,000 | 21.00 | 147,000 | 1947_____ | 7,000 | 10.00 | 70,000 |
| 1942_____ | 7,000 | 16.00 | 112,000 | | | | |

*Statement of Dividends Paid by the Whitney Chain & Mfg. Company*

| Year | Shares outstanding | Per share | Total dividend | Year | Shares outstanding | Per share | Total dividend |
|------|-------------------|-----------|----------------|------|-------------------|-----------|----------------|
| 1938_____ | 11,307 | 0 | 0 | 1943_____ | 11,307 | $8 | $90,456 |
| 1939_____ | 11,307 | $6 | $67,842 | 1944_____ | 11,307 | 10 | 113,070 |
| 1940_____ | 11,307 | 6 | 67,842 | 1945_____ | 11,307 | 7 | 79,149 |
| 1941_____ | 11,307 | 8 | 90,456 | 1946_____ | 11,307 | 10 | 113,070 |
| 1942_____ | 11,307 | 8 | 90,456 | 1947_____ | 11,307 | 15 | 169,605 |

In 1948 Whitney-Hanson Industries, Incorporated, paid dividends of $1.10 per share on 200,000 shares outstanding, a total of $220,000.

Profits earned by Whitney Chain and Hanson-Whitney in each of the years 1938–1947, inclusive, were as follows:

*Whitney Chain Company*

STATEMENT OF PROFITS (OR LOSS) AFTER TAXES AND AFTER ELIMINATING HANSON-WHITNEY DIVIDENDS RENEGOTIATION DOES NOT APPLY TO THE WHITNEY CHAIN COMPANY

|  | Profit before taxes | Profit after taxes | Dividends from Hanson-Whitney | Profit after taxes and dividends from Hanson-Whitney |
|---|---|---|---|---|
| 1938 | ($412. 59) | ($420. 01) | $56,250. 00 | ($56,670. 01) |
| 1939 | 149,367. 12 | 139,342. 77 | 104,198. 00 | 35,144. 77 |
| 1940 | 137,579. 89 | 129,073. 37 | 115,472. 00 | 13,601. 37 |
| 1941 | 350,697. 65 | 272,595. 39 | 110,235. 00 | 162,360. 39 |
| 1942 | 253,962. 13 | 182,755. 47 | 83,984. 00 | 98,771. 47 |
| 1943 | (109,873. 31) | (109,873. 31) | 89,233. 00 | (199,106. 31) |
| 1944 | 530,545. 37 | 346,089. 55 | 73,500. 00 | 272,589. 55 |
| 1945 | 155,557. 42 | 131,476. 82 | 73,500. 00 | 57,976. 82 |
| 1946 | 412,304. 50 | 275,237. 73 | 73,500. 00 | 201,737. 73 |
| 1947 | 754,019. 82 | 472,412. 19 | 52,500. 00 | 419,912. 19 |

*Hanson-Whitney Machine Company*

STATEMENT OF PROFITS AFTER TAXES AND RENEGOTIATION PAYMENTS

|  | Profit before taxes | Profit after taxes | Net renegotiation payments | Profit after renegotiation and taxes |
|---|---|---|---|---|
| 1938 | $112,253. 36 | $93,810. 03 | | $93,810. 03 |
| 1939 | 267,600. 13 | 212,969. 97 | | 212,969. 97 |
| 1940 | 599,696. 40 | 340,805. 99 | | 340,805. 99 |
| 1941 | 1,109,212. 74 | 410,903. 08 | | 410,903. 08 |
| 1942 | 1,847,490. 14 | 508,877. 36 | $164,872. 27 | 344,006. 09 |
| 1943 | 2,536,161. 78 | 685,912. 51 | 223,806 40 | 462,106. 11 |
| 1944 | 1,357,845. 18 | 371,698. 48 | 162,442. 68 | 209,255. 80 |
| 1945 | 591,114. 49 | 182,782. 16 | 10,019. 50 | 172,762. 66 |
| 1946 | 201,861. 55 | 125,449. 42 | | 125,449. 42 |
| 1947 | 135,563. 89 | 96,657. 26 | | 96,657. 26 |

In 1948, Whitney Hanson Industries, Incorporated, had profit before taxes of $1,074,282.02 and profit after taxes of $648,960.05.

The consolidation of Whitney Chain and Hanson-Whitney constituted a reorganization under the provisions of section 112 (g) (1) (A) of the 1939 Internal Revenue Code.

Perhaps the foregoing statement of the stipulated facts is unnecessarily detailed. If so, a summary of the material facts will help to point up the issue.

Two corporations are involved, Whitney Chain, owned by the Whitney interests, and Hanson-Whitney, in which Einar Hanson owned a controlling share. For business reasons a consolidation of the two was agreed upon, as an integral part of which the indebtedness of the Whitneys to their corporation was to be canceled. In return for this cancellation and other considerations set forth in the

stipulated facts, the proportionate share of stock in the new corporation which the Whitneys would otherwise have been entitled to receive was reduced and the share of the Hanson interests was proportionately increased.

At the time of the merger petitioner held 2,293 shares of Whitney Chain stock and was indebted to Whitney Chain in the amount of $67,500. Her shares had a basis of $275,160. In the reorganization (which was concededly within section 112 (g) (1) (A)) petitioner received 33,524 shares in the new corporation having a fair market value of $10.50 each, or a total of $352,002. Had it not been for the debt cancellation and the arrangement with respect thereto referred to above, petitioner would have been entitled to receive an additional 2,656 shares in the new corporation. Under the reorganization plan, however, these additional shares were issued to the Hanson interests.

On these facts it is petitioner's contention that any gain realized by petitioner is taxable as a long-term capital gain under section 112 (c) (1), Internal Revenue Code of 1939,[1] as a gain resulting from the receipt of other property, or under section 117 (a) (4), Internal Revenue Code of 1939, as a long-term capital gain on the basis that the cancellation represented a partial redemption of petitioner's stock. It is conceded that the debt cancellation was an integral part of the reorganization. We are also of the opinion that every other step or transaction entered into under the reorganization plan, including the arrangement whereby the Whitneys' share of stock in the new corporation was reduced and the Hansons' share accordingly increased, must be treated as parts of the reorganization. We must

---

[1] SEC. 112. RECOGNITION OF GAIN OR LOSS.

(a) GENERAL RULE.—Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.

(b) EXCHANGES SOLELY IN KIND.—

\* \* \* \* \* \*

(3) STOCK FOR STOCK ON REORGANIZATION.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

\* \* \* \* \* \*

(c) GAIN FROM EXCHANGES NOT SOLELY IN KIND.—

(1) If an exchange would be within the provisions of subsection (b) (1), (2), (3), or (5), or within the provisions of subsection (1), of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph or by subsection (1) to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.

(2) If a distribution made in pursuance of a plan of reorganization is within the provisions of paragraph (1) of this subsection but has the effect of the distribution of a taxable dividend, then there shall be taxed as a dividend to each distributee such an amount of the gain recognized under paragraph (1) as is not in excess of his ratable share of the undistributed earnings and profits of the corporation accumulated after February 28, 1913. The remainder, if any, of the gain recognized under paragraph (1) shall be taxed as a gain from the exchange of property.

view the reorganization as a whole, *Isabella M. Sheldon*, 6 T. C. 510, and we do not think that the transaction whereby petitioner relinquished her right to a larger portion of new stock in return for debt cancellation can be lifted out of the reorganization puzzle and treated as a separate piece for the purpose of determining gain or loss. It seems to us that is what petitioner seeks to do when it is argued that this particular step in the reorganization was tantamount to a partial redemption of petitioner's new stock.

For instance, petitioner argues that the gain should be reduced by the basis of the new stock which petitioner "gave up" to the Hansons in return for debt cancellation, or, as a variation, that what really took place was a sale to the corporation of a portion of the Whitneys' stock and a reissuance of that portion to the Hansons. A somewhat similar argument was rejected in *Isabella M. Sheldon, supra.*

Section 112 provides for recognition of gain in an amount not in excess of the money or fair market value of other property received in addition to stock. That the debt cancellation was the equivalent of cash is apparently accepted by both parties and finds support in *R. D. Walker*, 34 B. T. A. 983. And though petitioner argues that her gain should be reduced by the basis of the new stock which she "gave up" to the Hansons, we think the amount of gain must depend on the end result of the reorganization plan. See *Isabella M. Sheldon, supra.* On the facts before us that end result is as follows: Petitioner exchanged 2,293 shares of Whitney Chain stock with a total basis of $275,160 for 33,524 shares of Whitney-Hanson stock with a fair market value of at least $352,002 plus cancellation of indebtedness amounting to $67,500. This resulted in a gain of at least $144,342 in the reorganization recognizable as a long-term capital gain under section 112 (c) (1) to the extent of $67,500, unless the debt cancellation is to be treated as having the effect of the distribution of a taxable dividend, in which event it is to be so taxed. See section 112 (c) (2).

Both parties agree that the question thus posed is one of fact. Be that as it may, from the facts before us a reasonable inference is that the Whitneys received a smaller share of the new stock because, as a result of the debt cancellation, Whitney Chain had less to offer in the reorganization than it would otherwise have had. The notes of the Whitneys to Whitney Chain represented an asset of that corporation which disappeared in the reorganization by cancellation of the indebtedness. It follows that the Whitneys' share in the new corporation was thereby reduced, for Whitney Chain had less to offer in the reorganization. The debt cancellation was the same as a distribution. Section 112 (c) (2) provides that if a distribution "has the effect" of a taxable dividend, it is to be so recognized. In this respect we have pointed out in *Estate of Edward T. Bedford*, 1 T. C. 478, affd. 325

U. S. 283, that this section "applies by its terms not to distributions which take the form of a dividend, but to any distribution which has the *effect* of the distribution of a taxable dividend." As stated above, the cancellation of the debt of petitioner was the equivalent of the receipt of cash by her. No contention is made by petitioner that there were no earnings and profits from which a dividend could have been paid equal to the amount of debt canceled and no evidence to that effect was introduced. The fact that the debt cancellation was not distributed among the stockholders in proportion to their stockholdings, but rather in proportion to their indebtedness would not prevent the transaction from having the effect of a dividend. *J. Natwick*, 36 B. T. A. 866. Neither do we think that because petitioner forewent her right to a greater proportion of stock in the new corporation as part of the reorganization plan the result should be otherwise. The plain fact is that in addition to stock in the new corporation she received a distribution of the equivalent of cash as an integral part of the reorganization. In these circumstances the "effect" of the distribution is that of a taxable dividend. *Estate of Edward T. Bedford, supra; Little Investment Co.* v. *Rose*, (C. A. 5) 86 F. 2d 50; *Love* v. *Commissioner*, 113 F. 2d 236. Accordingly, it is recognizable under section 112 (c) (2).

Petitioner cites *R. D. Walker, supra,* as the nearest case on its facts to the instant case, pointing out that there the debt cancellation was held taxable under section 112 (c) (1) and not under section 112 (c) (2). But *Walker* came before *Bedford*, it is not clear from the Findings or Opinion that there were earnings or profits that would support a dividend, and when read in the light of its own facts we do not think it is determinative of our question here.

We hold that the cancellation of petitioner's indebtedness had the effect of the distribution of a taxable dividend and should be so taxed.

In conclusion, we note a further contention made by petitioner, that the amount of the gain should be reduced by that portion of the indebtedness canceled which represents interest. There is no merit in this contention. It is stipulated that petitioner was indebted to Whitney Chain in the amount of $67,500 at the time of the reorganization. Though part of the debt when first assumed by petitioner represented interest owed by her father to Whitney Chain, that assumption was accomplished by a novation, the legal effect of which was to create a new debtor-creditor relationship. Thus the interest owed by the father lost its identity and became merged in the new indebtedness owed by petitioner to Whitney Chain. No interest deduction is allowable to petitioner.

Reviewed by the Court.

*Decision will be entered under Rule 50.*