R. D. WALKER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 76762.   Promulgated August 27, 1936.

*William H. Armbrecht, Esq.*, and *Thomas E. Twitty, Esq.*, for the petitioner.

*L. W. Creason, Esq.*, for the respondent.

TYSON: This proceeding seeks redetermination of an income tax deficiency in the amount of $3,673.73 for the calendar year 1930.

Petitioner assigns error in the respondent's determination that the steps taken in a reorganization through recapitalization of the R. D. Walker Lumber Co. in 1930, by which petitioner in exchange for stock in that corporation received the equivalent of cash and stock in its recapitalization, constituted a single, nonseparable transaction and was taxable as such. Petitioner further assigns error in the respondent's determination of the amount of gain derived from the transaction. Petitioner contends that he sold certain shares of stock of that company for the cancellation of his indebtedness to it without profit or loss and that, then, in a separate transaction his remaining shares of stock in that company were exchanged for new shares issued upon the reorganization, or, in the alternative, that the new shares were received as a nontaxable stock dividend.

Respondent denies the errors assigned and, in the alternative, by amended answer, to conform to proof, affirmatively alleges that the petitioner received in 1930 taxable dividends in the amount of $121,000, consisting of preferred stock of $41,300 and the cancellation of an indebtedness of $79,700, and requests that the deficiency be increased accordingly.

The stipulated facts are included herein by reference. A brief statement of the material facts as a part of our opinion will suffice.

Petitioner, an individual residing in Mobile, Alabama, had been engaged in the lumber business for many years. He had been the president of the R. D. Walker Lumber Co. since its organization on December 24, 1923, with a paid in capital of $200,000, represented by 2,000 shares of common stock of the par value of $100 each. There was no change in its capital structure until December 23, 1930, and no dividends were ever paid. The Lumber Co. engaged in the wholesale lumber business and petitioner not only managed and controlled the affairs of the corporation, but also personally handled practically all of its purchases and sales. The nature of the Lumber Co.'s business required a substantial line of bank credit. In or about 1930 the bank materially reduced the company's line of credit.

On December 22, 1930, the stockholders of the Lumber Co. and their respective indebtedness to the company were as follows:

| Stockholder | Indebtedness | Shares of stock held |
| --- | --- | --- |
| R. D. Walker (petitioner) | $79,700.00 | 932 |
| Mrs. R. D. Walker (wife of petitioner) | None | 750 |
| Mrs. J. V Walker (mother of petitioner) | None | 18 |
| Harry Majerski | 18,742.25 | 150 |
| H. L Gaines, Jr | 12,672.53 | 100 |
| E. H. Buck | 5,778.54 | 50 |

The cost of such shares of stock to each stockholder was $100 per share. The above stated indebtedness to the Lumber Co. was not created by loans or advances to those individuals in anticipation of or in lieu of dividends, but grew out of loans to pay off bank loans used to purchase stock in the Lumber Co. and also withdrawals on personal drawing accounts in excess of commissions or salaries earned over a period of years.

On December 23, 1930, the board of directors of the Lumber Co. adopted four resolutions providing, in part, as follows:

(1) * * * that the treasurer of the Company be authorized and instructed to accept in payment of notes and accounts an equal value in shares of stock of this company of the following stockholders:

    R. D. Walker
    Harry Majerski
    H. L. Gaines, Jr.
    E. H. Buck

Further, that any excess in value per books of the company of the stock surrendered be credited to said stockholders and such value above the indebtedness be issued in new stock as hereinafter provided.

(2) * * * that it is desirable to amend its articles of corporation so as to authorize the issuance by it of 2,000 shares of preferred stock at the par value of $100.00 per share, and 20,000 shares of no-par common stock, both classes of stock having full voting rights; the said preferred stock to be issued on basis of 6% cumulative dividends, payable semi-annually from the surplus or earnings of the Company on January 1st, and July 1st, and to be callable by vote of majority of directors, at a price of $105.00.

(3) Whereas the surrender of common stock by stockholders, R. D. Walker, Harry Majerski, H. L. Gaines, Jr., E. H. Buck, in payment of their accounts, will result in approximately $90,000.00 being outstanding in the old common stock of the Company, and whereas there will be approximately $105,000.00 in surplus and undivided earnings account, now therefore, be it resolved by the board of directors that a stock dividend be declared, issuing a total of $150,000.00, 1,500 shares of $100.00 par value, 6% cumulative preferred stock, and 20,000 shares, no par common stock in lieu of the outstanding old common stock and surplus and undivided earnings, * * *

(4) * * * that a special meeting of stockholders be held at once to act on the above mentioned matters.

On the same day, December 23, 1930, the stockholders of the Lumber Co. held a special meeting after a waiver by each of all notice thereof and all consenting thereto, at which meeting there was passed a resolution specifically setting forth and adopting the amendment to the Lumber Co.'s articles of incorporation for the increase in its authorized capital stock as set forth in the resolution adopted by the board of directors, and also there was adopted a resolution approving the action of the board of directors "with reference to cancellation of debts of stockholders and issuance of stock dividend as shown in detail by resolutions adopted by the Board of Directors."

At the close of and immediately after December 23, 1930, the stockholders of the Lumber Co. and their respective stock holdings in and indebtedness to the company were as follows:

| | Shares of old $100 par value common stock | Shares of new no par value common stock | New 6% preferred stock | | Indebtedness |
|---|---|---|---|---|---|
| | | | Shares | Par value | |
| R. D. Walker | None | 9, 320 | 413 | 41, 300 | None |
| Mrs. R. D. Walker (wife of R. D. Walker) | None | 7, 500 | 973 | 97, 300 | None |
| Mrs. J. V. Walker (mother of R. D. Walker) | None | 180 | 23 | 2, 300 | None |
| Harry Majerski | None | 1, 500 | None | None | None |
| H. L. Gaines, Jr | None | 1, 000 | None | None | None |
| E. H. Buck | None | 500 | 6 | 600 | None |
| Treasury Stock | None | | 81 | 8, 100 | |
| Unissued authorized stock | | | 4 | 400 | |
| Total | None | 20, 000 | 1, 500 | 150, 000 | None |

Petitioner concedes in his argument that the cancellation of his indebtedness of $79,700 in exchange for his surrender of 797 shares of $100 par value stock was the equivalent of the receipt of cash in that amount and with this we agree. Cf. *Ida L. Dowling*, 13 B. T. A. 787; *Hugh H. Miller*, 25 B. T. A. 418; *B. F. Avery & Sons, Inc.*, 26 B. T. A. 1393; *F. W. Fitch*, 27 B. T. A. 615; affd., 70 Fed. (2d) 583; *Moses Cohen*, 28 B. T. A. 190; affd., 77 Fed. (2d) 184. Petitioner contends however that such exchange was really a sale, separate and distinct from his exchange of stock for stock. Upon the facts we conclude that the resolutions adopted on December 23, 1930, embraced a plan for the recapitalization of the Lumber Co. by the issuance of new preferred and common shares *in lieu* of the old outstanding common stock and, as an integral part thereof, the cancellation of the indebtedness of petitioner and three employees of the Lumber Co. Under the applicable statute, set forth in the margin,[1] a recapitalization constitutes a "reorganization" as that term

[1] 1928 Act—

SEC. 112. RECOGNITION OF GAIN OR LOSS.

(a) *General rule.*—Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.

(b) *Exchanges solely in kind.*—

\* \* \* \* \* \*

(3) STOCK FOR STOCK ON REORGANIZATION.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

\* \* \* \* \* \* \*

(c) *Gain from exchanges not solely in kind.*—

(1) If an exchange would be within the provisions of section (b) (1), (2), (3), or (5) of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.

(i) *Definition of reorganization.*—

(1) The term "reorganization" means \* \* \* (C) a recapitalization, or (D) a mere change in identity, form, or place of organization, however effected.

\* \* \* \* \* \* \*

is therein defined and, in the instant case, since petitioner in exchange for his old common stock received not only new stock but also "other property or money" (i. e., the cancellation of his $79,700 debt to the corporation), the transaction falls within the provisions of section 112 (c) (1) and the gain "shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property." *First Seattle Dexter Horton National Bank et al., Executors*, 27 B. T. A. 1242; affd., 77 Fed. (2d) 45.

We do not regard the case of *Bruce* v. *Helvering*, 76 Fed. (2d) 442, as applicable to the facts of this case. In that case the taxpayer entered into a binding agreement to sell a part of her stock in E. E. Bruce & Co., a corporation, to the Churchill Drug Co., another corporation, for cash in a bona fide sale. Subsequently, on the same day, but after the agreement of sale was completed, she was informed that the Churchill Drug Co. was proposing to merge the two corporations and she was offered an exchange of stock of the Churchill Drug Co. for her remaining stock in E. E. Bruce & Co., which offer she accepted. It was held that these transactions were separate, as the taxpayer was neither informed of the proposed merger nor offered the exchange until after the sale had become a closed transaction. These facts are vastly different from those in the instant case, where the petitioner at the time of the cancellation of his indebtedness manifestly knew all about the plan of recapitalization, participated in carrying it out, and received under it new stock in the recapitalized corporation in addition to the cancellation of his indebtedness.

The two cases of *A. W. Leonard*, 21 B. T. A. 549, and *C. George Armstrong*, 31 B. T. A. 418, are distinguishable from the instant case on the facts, in that in both of those two cases the taxpayer prior to the reorganization owned two distinct classes of property, namely, common stock and preferred stock, and under the plan of reorganization specifically exchanged the old common stock for new common stock and specifically sold the preferred stock for cash, whereas, in the instant case, the taxpayer prior to the recapitalization owned only the one class of property, namely, the old common stock, which in one nonseparable transaction he exchanged for new common and preferred stock and cash, or its equivalent, in a recapitalization of the corporation.

In his determination of the deficiency here in controversy, the respondent computed the petitioner's gain as follows:

Received in reorganization:

| | |
|---|---|
| Cash (through cancellation of indebtedness) | $79,700.00 |
| 413.202 shares of preferred stock at $100.00 per share | 41,320.20 |
| 9,320 shares of common stock at $2.77 per share | 25,816.40 |
| Total Received | $146,836.60 |
| Cost of 932 shares of old stock | 93,200.00 |
| Profit | $53,636.60 |

We think such determination is erroneous as to value of the preferred and no par common stock received by petitioner in the transaction in question. The stipulation of facts sets forth the Lumber Co.'s gross sales in dollars and footage of lumber, its book net income and taxable net income or loss for each of the years 1924 to 1934, and its balance sheets for the years ended December 31, 1929, and 1930. In addition thereto we have the testimony of witnesses as to the nature and condition of the Lumber Co.'s business and affairs. The Lumber Co.'s book net worth on December 31, 1930, was $196,359.56, which included an amount of $50,000 Bladon Springs Lumber Co. stock which was worthless in 1930. Thus the capital and surplus of the Lumber Co. is reduced to $146,359.56, which is less than the $150,000 par value of the 1,500 shares of preferred stock issued and outstanding on December 31, 1930.

We conclude that the Lumber Co.'s no par common stock had no fair market value and that its preferred stock had a fair market value of $97.57 per share on December 23, 1930, when received by petitioner in the transaction in question. Therefore, petitioner in exchange for his 932 shares of old common stock, which cost $93,200, received the cancellation of a $79,700 debt, the equivalent of cash in that amount, 413 shares of preferred stock having an aggregate value of $40,296.41, and 9,320 shares of no par common stock of no fair market value, or a total value of $119,996.41, and realized a taxable gain in the amount of $26,796.41.

Our holding as set out above necessarily leads to the further holding that under the facts disclosed in this record there was no dividend received by petitioner in 1930 either by way of the issuance to him of stock or otherwise.

*Decision will be entered under Rule 50.*