**John L. HAWKINSON and Laura W. Hawkinson, husband and wife, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 208, Docket 23846.**

United States Court of Appeals
Second Circuit.

Argued Feb. 16, 1956.

Decided July 23, 1956.

Karl R. Price, Washington, D. C., Ellsworth C. Alvord, Washington, D. C., John S. Murtha, Hartford, Conn., for petitioners.

Grant W. Wiprud, Attorney, Department of Justice, Washington, D. C., H. Brian Holland, Asst. Atty. Gen., Lee A. Jackson and Hilbert P. Zarky, Attorneys, Department of Justice, Washington, D. C., for respondents.

Before CLARK, Chief Judge, and FRANK and HINCKS, Circuit Judges.

HINCKS, Circuit Judge.

This is a petition for review of a decision of the Tax Court, 23 T.C. 933, holding taxable as ordinary income, under § 112(c) (2), I.R.C. of 1939, 26 U.S.C.A. § 112(c) (2), an amount of canceled indebtedness owed by taxpayer wife to a corporation, Whitney Chain,[1] of which she was a stockholder, and canceled in the process of the consolidation of Whitney Chain with Hanson-Whitney[2] to form Whitney-Hanson Industries.[3]

The facts were stipulated and are set forth fully in the opinion of the Tax Court. The relevant facts are as follows. Whitney Chain was a closely held Connecticut corporation organized in 1906. Its founder, Clarence E. Whitney (hereinafter called Clarence), was president and principal stockholder until his death in 1933, at which time he owned 10,990 of the outstanding 15,000 shares of $100 par value common stock then worth $1,318,800. The remaining 4,010 shares were owned by members of the Whitney family. At the date of his death Clarence was indebted to Whitney Chain for loans previously made to him in the principal amount of $143,050. Thereafter, in the course of the administration of Clarence's estate, the estate borrowed an additional $104,500 to pay estate taxes and administration expenses, making a total indebtedness, including interest, of $282,920 outstanding immediately prior to distribution of the estate in December 1938.

To avoid the necessity of selling the estate's stock in order to pay off its indebtedness to Whitney Chain, the heirs of the estate (Clarence's widow, Nellie, and four children, Laura (the co-petitioner), Dorothy, Winthrop, and Lawrence) entered into a novation with Whitney Chain dated December 19, 1938 whereby each heir assumed a portion of the estate's indebtedness to Whitney Chain pro rata to his or her share in the proceeds of the estate. This agreement effected a release of the estate which thereupon distributed its Whitney Chain stock one-third to the widow Nellie and one-sixth each to Laura, Dorothy, Winthrop, and Lawrence. Shortly thereafter, on March 29, 1939, by a further agreement of novation the heirs readjusted the distribution of Whitney Chain stock formerly held by the estate and correspondingly adjusted the assumption of the estate's former indebtedness to Whitney Chain. In addition to the indebtedness incurred through the above agreements, three of the Whitneys were further indebted to the corporation at the date of its consolidation with Hanson-Whitney, as follows:

| Stockholder | Debt Outstanding | Year of Last Borrowing |
|---|---|---|
| Winthrop H. Whitney | $27,897.67 | 1939 |
| Nellie H. Whitney | 13,950.00 | 1930 |
| Laura W. Hawkinson | 13,500.00 | 1937 |

All of this indebtedness was in the form of noninterest bearing demand notes.

As a result of the foregoing transactions (and others involving minor

---

1. The Whitney Chain & Mfg. Co.

2. The Hanson-Whitney Machine Co.

3. Whitney-Hanson Industries, Inc.

amounts of stock and payments on indebtedness) the Whitneys' respective holdings of Whitney Chain stock and indebtedness to Whitney Chain immediately preceding the agreement of consolidation on December 8, 1947 were:

| Stockholder | Percent of Shares | Percent of Indebtedness | Amount of Indebtedness |
|---|---|---|---|
| Nellie H. Whitney | 33.76% | 33.85% | $110,397.30 |
| Laura W. Hawkinson | 20.30 | 20.70 | 67,500.00 |
| Dorothy W. Stevens | 20.30 | 16.41 | 53,500.00 |
| Lawrence A. Whitney | 18.97 | 16.42 | 41,175.73 |
| [4] Winthrop H. Whitney | 6.64 | 12.62 | 53,546.17 |
| Qualifying Shares | .03 | | |
| | 100.00 | 100.00 | 326,119.20 |

At that time Hanson-Whitney, the other consolidating Connecticut corporation, was owned as follows:

| Stockholder | Shares | Percent of Total |
|---|---|---|
| Whitney Chain | 5,246 | 74.94% |
| Einar A. Hanson | 879 | 12.56 |
| Svea H. Hanson | 871 | 12.44 |
| Qualifying Shares | 4 | 0.06 |
| | 7,000 | 100.00 |

On February 1, 1948, the two corporations were consolidated pursuant to Connecticut law.[5] The reasons for the consolidation were to effect operating economies and to facilitate the marketing of stock in order to obtain outside capital. Under Connecticut corporation law, the consolidation could be accomplished, over objection by the Hansons, only by buying out their minority stock interest in Hanson-Whitney. Cash for such a purpose was not available. Hence, to accomplish the consolidation it was necessary for the Whitneys to have the Hansons' agreement. As the price for their agreement, the Hansons demanded that the indebtedness of the Whitney Chain stockholders be canceled and that the distribution of stock in the consolidated corporation be based on the corporate assets of the predecessor corporations exclusive of the debts due from said stockholders.

At the date of consolidation the Whitney stockholders' indebtedness represented 5.7% of the net assets of the two corporations. It was agreed to cancel this indebtedness in the consolidation in exchange for a 5.7% shift of equity (plus a further shift of 0.7% attributable to other factors) from the Whitneys to the Hansons. On the basis of 200,000 shares issued by the consolidated corporation this 6.4% reduction (5.7% plus 0.7%) was accomplished by issuing 12,832 shares to the Hansons which would have gone to the Whitneys if the debt assets of Whitney Chain had been taken over by the new corporation. The burden of this reduction of potential ownership in the new corporation was distributed amongst the Whitneys in proportion to the amount of their indebtedness canceled.

The petitioner Laura, at the time of the consolidation, held 2,293 shares of Whitney Chain stock and was indebted to Whitney Chain in the amount of $67,500. Her shares had a basis of $275,160. She received 33,524 shares in the consolidated corporation having a

---

4. The substantial variation between Winthrop's percentage of equity and indebtedness derives from the substantial loans made to him by the corporation totaling $27,897.67 in addition to the indebtedness assumed in the two novations winding up the estate of Clarence E. Whitney.

5. The agreement of December 8, 1947 was to take effect as of February 1, 1948. On February 3, 1948 it was filed with the Connecticut Secretary of State.

value of $10.50 each, or a total of $352,-002. Had it not been for the debt cancellation and other considerations, taxpayer would have been entitled to receive an additional 2,656 shares in the new corporation. Under the consolidation agreement, these additional shares were issued to the Hansons and the indebtedness canceled was charged to the surplus of Whitney Chain.

The sole question on this appeal is whether the gain to the petitioner Laura in the form of the canceled indebtedness, which is concededly recognizable boot within the meaning of § 112(c) (1), I.R.C. of 1939,[6] is taxable under § 112(c) (1) as a capital gain or under § 112(c) (2) as a dividend. The latter subsection provides that if a distribution of boot within § 112(c) (1) "has the effect of the distribution of a taxable dividend" then it shall be taxed as a dividend to the extent of the stockholder's ratable share of the undistributed earnings and profits of the corporation. It is conceded by the Commissioner that the consolidation falls within § 112(g) (1) (A) and that, except for the amount of boot, the gain from the transaction is nonrecognizable under § 112(b) (3).

It is equally undisputed that the taxpayer's ratable share of Whitney Chain earnings and profits is far in excess of the amount of the canceled indebtedness.[7]

The Commissioner claims that on the authority of C. I. R. v. Estate of Bedford, 325 U.S. 283, 65 S.Ct. 1157, 1161, 89 L.Ed. 1611, it is unnecessary to demonstrate that the distribution of boot "had the effect of * * * a taxable dividend" since it is contended that Bedford establishes as a matter of law that all boot distributions are considered dividends to the extent of undistributed earnings and profits. Indeed, this seems to be in accordance with the interpretation generally placed on Bedford. However, that interpretation has encountered severe criticism. Darrell, 24 Taxes 266, 271-2, 274 (1946); Wittenstein, 8 Tax L.Rev. 63 (1952). Also cited to the same proposition is Becher v. C. I. R., 2 Cir., 221 F.2d 252.[8] It should be noted that despite broad statements in those opinions each dealt with a pro rata distribution out of corporate earnings and profits which, consequently, had the effect of a taxable dividend.[9] Indeed, in Bedford it appears that the pur-

---

6. R. D. Walker, 34 B.T.A. 983.

7. On January 31, 1948, immediately preceding the effective date of the consolidation, Whitney Chain's surplus totaled $2,502,984.89. Hanson-Whitney's surplus totaled $1,556,309.62.

   It is significant that for the year 1939 Whitney Chain was held liable for a surtax under § 102 of the 1939 Code, 26 U.S. C.A. § 102, in a decision based largely on the Tax Court's determination that a dividend could and should have been paid and applied against the precise indebtedness involved here. Whitney Chain & Mfg. Company, 3 T.C. 1109, affirmed 2 Cir., 149 F.2d 936. In that proceeding the Tax Court commented on the value of these loans to the business purposes of the corporation as follows: " * * * $347,800 was left idle in the form of noninterest-bearing loans to stockholders, made for reasons purely personal to the stockholders and contributing nothing to the business activities of the petitioner." 3 T. C. 1109, 1118.

   For the years 1940, 1941, 1945, and 1946 the Commissioner also determined §

102 deficiencies against Whitney Chain. These claimed deficiencies were settled in 1950 on the basis that the corporation acquiesced in the payment of the deficiency assessed for 1940, and the Commissioner agreed to a refund of taxes collected on the basis of the 1941 deficiency assessment and agreed not to assess the deficiencies determined for 1945 and 1946.

8. See also Liddon v. C. I. R., 6 Cir., 230 F.2d 304. There, however, the sole issue was whether the underlying transactions constituted separately a liquidation of the old corporation plus the formation of the new within §§ 115(c) and 112(b) (3), respectively, or a reorganization within § 112(g). It was conceded that in the latter event the boot did have the effect of a dividend and consequently was taxable at ordinary income rates under § 112(c) (2).

9. The pro rata feature was likewise present in Lewis v. C. I. R., 1 Cir., 176 F.2d 646; Love v. C. I. R., 3 Cir., 113 F.2d 236; Rose v. Little Investment Co., 5 Cir., 86 F.2d 50; Estate of Hill, 10 T.C. 1090.

pose of the recapitalization was to enable the corporation under applicable state law to pay a dividend out of its current net earnings by removing a paper deficit acquired in prior years by charging stock dividends to surplus, 325 U.S. at pages 288–289, 65 S.Ct. at pages 1159–1160.[10] Were we faced with a case where the distribution *did not* have the effect of a taxable dividend[11] we should find it difficult to reconcile the Commissioner's present interpretation of Bedford with the clear language of § 112(c) (2). Fortunately we need not here decide the point for we conclude that the distribution in this case like the distribution in Bedford and Becher *did* have the effect of a taxable dividend.

The petitioners, in pressing a contrary contention, rely heavily on the assertions that the cancellation of indebtedness related solely to the amount of indebtedness rather than to share ownership in the corporation and that the Whitneys suffered a substantial reduction of interest in the consolidation. The former contention is in large part false since the bulk of the indebtedness canceled had been incurred pro rata in the novations settling the Clarence E. Whitney estate. To the extent that the canceled indebtedness represented debts so incurred the distribution had all the earmarks of a taxable dividend, i. e., a pro rata distribution out of corporate earnings and profits. And to the extent that the indebtedness was not prorated the cancellation also had the effect of a taxable dividend since the notes evidenced non-productive prior advances by a closely held family corporation to its shareholders for their personal use. J. Natwick, 36 B.T.A. 866.

The reduction of the Whitneys' interest in the consolidated corporation in proportion to the ratio between the canceled Whitney Chain notes and the net assets of the two corporations (5.7%) was equivalent to a redemption of stock in Whitney Chain in the amount of the indebtedness preliminary to a consolidation of the corporations on the basis of their productive assets. If the Whitney notes held by Whitney Chain had been transferred to the consolidated corporation as assets contributed by the Whitney group and the distribution of capital stock had reflected those contributed assets, the Whitneys in effect would have held 5.7% of the stock on a non-paid-up basis. Thus the so-called reduction of interest was in reality a preservation of the economic status quo by a realistic alignment of ownership in the new corporation to reflect its productive assets.

If the mutual cancellation of indebtedness and equity had been accomplished solely by stock redemption we would have no difficulty in concluding that the transaction had the effect of a taxable dividend. Kirschenbaum v. C. I. R., 2 Cir., 155 F.2d 23, 170 A.L.R. 1389, certiorari denied 329 U.S. 726, 67 S.Ct. 75, 91 L.Ed. 628; Flanagan v. Helvering, 73 App.D.C. 46, 116 F.2d 937; J. Natwick, supra; T.Reg. 118, § 39.115–9. A similar conclusion is not obstructed here by the fact that the same result was accomplished in a plan of consolidation since §§ 112(c) (2) and 115(g) are in *pari materia.* Kirschenbaum v. C. I. R., supra. We hold that the cancellation of indebtedness was taxable as ordinary income.

Affirmed.

---

10. It should be noted that Bedford relied heavily in its holding on the Dobson rule, Dobson v. C. I. R., 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248, which was modified in 1948 by amendment of § 1141(a), I.R.C. of 1939, 26 U.S.C.A. § 1141(a).

11. Imler v. C. I. R., 11 T.C. 836; Fred B. Snite, 10 T.C. 523, 530; see also C. I. R. v. Sullivan, 5 Cir., 210 F.2d 607.