ARTHUR L. KNIFFEN AND LILLIAN KNIFFEN, PETITIONERS, *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 85516.  Filed December 20, 1962.

*Urban C. Bergbauer, Jr., Esq.*, for the petitioners.
*Dean E. Sharp, Esq.*, for the respondent.

WITHEY, *Judge:* The respondent determined deficiencies in petitioners' income tax for the years and in the amounts as follows:

| Year | Deficiency |
|---|---|
| 1955 | $2,384.95 |
| 1957 | 10,779.48 |

The issues presented for our decision are:

(1) Whether the transfer by petitioner Arthur L. Kniffen in 1957 of the assets and liabilities of his sole proprietorship to his controlled corporation constituted a taxable exchange under sections 351 and 357 of the Internal Revenue Code of 1954.

(2) Whether petitioner realized interest income in the amount of $3,139.10 in 1957.

(3) Whether petitioner realized taxable income in 1957 resulting from the exchange of a promissory note in the amount of $7,000 during that year.

(4) Whether petitioner is entitled to deduct business expenses in the amount of $22,466.31 for 1957 which were not paid during that year.

(5) Whether petitioner realized taxable income in 1957 in the amount of $2,458.23 as a result of furnishing offices to several related corporations.

(6) Whether petitioner realized taxable income in 1957 in the amount of $465.30 resulting from a sales commission.

(7) Whether petitioner realized taxable income in 1957 in the amount of $50 resulting from a lease deposit.

Additional issues presented by the pleadings have been disposed of by stipulation of the parties.

### GENERAL FINDINGS OF FACT.

Some of the facts have been stipulated and are found accordingly.

Petitioners Arthur L. Kniffen and Lillian Kniffen are husband and wife residing at St. Louis, Mo. They filed joint Federal income tax returns for 1955 and 1957 with the director of internal revenue at St. Louis, Mo.

Petitioners prepared and filed their income tax return for 1957 on the cash receipts and disbursements method.

During 1955, 1956, and January, February, and March, 1957, Arthur L. Kniffen was engaged in the business of purchasing, selling, and renting real estate under the name of Arthur L. Kniffen Real Estate Co., sometimes hereinafter referred to as the proprietorship.

### *Issue 1. Section 351—Partially Taxable Exchange.*

#### FINDINGS OF FACT.

On March 31, 1957, the total assets of Arthur L. Kniffen Real Estate Co. at their adjusted basis were as follows:

| | | |
|---|---:|---:|
| Real estate rental properties | $165, 547. 67 | |
| Less: Reserve for depreciation | 7, 368. 36 | $158, 179. 31 |
| Geyer Road land | | 45, 541. 60 |
| Lake Tishomingo lot | | 599. 46 |
| Furniture and fixtures | 6, 910. 25 | |
| Less: Reserve for depreciation | 2, 740. 75 | 4, 169. 50 |
| Escrow deposits | | 498. 11 |
| Notes and deeds of trust receivable | | 38, 644. 00 |
| Savings and loan share accounts | | 4, 975. 83 |
| Accounts receivable: | | |
| Catalina Builders, Inc. | | 22, 577. 72 |
| Kniffen Homes Sales, Inc. | | 4, 406. 23 |
| Ram Construction, Inc. | | 1, 485. 85 |
| Others | | 4, 803. 30 |
| Total | | 285, 880. 91 |

The total liabilities of the proprietorship as of March 31, 1957, were as follows:

*Liabilities*

Accounts payable:

| | |
|---|---:|
| Kniffen Subdivision Sales, Inc. | $44, 625. 79 |
| Kniffen Home Dist., Inc. | 6, 680. 15 |
| Arthur L. Kniffen, Sr. | 830. 10 |
| Other credit balances | 37. 96 |
| Customer accounts | 4, 582. 89 |
| Accounts payable | 23, 167. 87 |
| Accrual payroll taxes | 1, 497. 65 |
| Deferred commissions | 4, 223. 28 |
| Equity of others in property and note | 15, 689. 23 |
| Notes payable | 191, 897. 57 |
| Rental deposits | 895. 00 |
| Total | 294, 127. 49 |

Arthur L. Kniffen transferred the foregoing assets and liabilities to Kniffen Subdivision Sales, Inc., on March 31, 1957, in exchange for 1,000 shares of its no-par stock. The corporation assumed all of the above-listed liabilities. Prior to the transfer of his proprietorship assets and liabilities to Kniffen Subdivision Sales, Inc., on March 31, 1957, Kniffen owned 48 out of its 50 issued shares, and he owned 1,048 out of the 1,050 issued shares of the corporation immediately after the transfer.

The transfer by Kniffen of his proprietorship assets and liabilities to the corporation was made for the purpose of consolidating the records and operations of different segments of his business, and for the further purpose of limiting his personal liability.

Immediately prior to the transfer by petitioner of his individual proprietorship assets and liabilities to the corporation, and at the time the exchange was formally completed, the books of account of Arthur Kniffen disclosed that the basis of his assets exceeded the total amount of his liabilities. With this understanding Kniffen Subdivision Sales, Inc., authorized the issuance to petitioner of 1,000 shares of no-par stock and a promissory note in the amount of $6,405.55.[1]

Beginning about April 1, 1957, petitioner's newly employed accountant conducted a thorough audit of his books resulting in the discovery of substantial losses in bank deposits caused by the embezzlement of funds by a previous employee. Because of this bank deposit shortage the liabilities of Arthur Kniffen as of March 31, 1957, actually exceeded the basis of his assets as of that date. As a result of this disclosure the promissory note for $6,405.55, which had been authorized by the corporation and which subsequently was executed by its vice president, was never delivered to petitioner, nor was it even seen by

---

[1] The method by which the figure was arrived at is not disclosed by the record.

him. The note has never been negotiated and no payment to petitioner in connection therewith or as a substitute therefor has been made.

Included among the liability accounts transferred by Kniffen to the corporation and assumed by it on March 31, 1957, was an indebtedness in the amount of $44,625.79 due and owing by petitioner to the corporation. Prior to the exchange, this account was reflected on the books of the corporation as an account receivable.

After the transfer of petitioner's proprietorship assets and liabilities to the corporation on March 31, 1957, its books showed no balance under "accounts receivable, Arthur L. Kniffen Real Estate Co." (a sole proprietorship).

The real estate rental properties transferred by petitioner to the corporation on March 31, 1957, and having a total adjusted basis of $158,179.31, consisted of 11 houses which were valued on the records of Kniffen Subdivision Sales, Inc., on April 1, 1957, at $189,100.

The Geyer Road land which was transferred by petitioner to Kniffen Subdivision Sales, Inc., on March 31, 1957, with an adjusted basis of $45,541.60 was sold by the corporation in July 1957 for $49,122.50.

On July 31, 1957, the corporation valued on its books the 1,000 shares of no-par stock issued on March 31, 1957, to Arthur Kniffen at $20,000.

On their joint income tax return for 1957, petitioners placed a fair market value of $20,000 on the 1,000 shares of Kniffen Subdivision Sales, Inc., stock acquired by petitioner on March 31, 1957.

On its corporation income tax return for the fiscal year ended September 30, 1957, Kniffen Subdivision Sales, Inc., placed a fair market value of $20,000 on the 1,000 shares of its stock issued to petitioner on March 31, 1957.

On a sworn net-worth statement subscribed by petitioners on September 5, 1958, they disclosed as an asset valued at $20,000 the stock issued by Kniffen Subdivision Sales, Inc., to Arthur Kniffen pursuant to the transfer of his proprietorship assets and liabilities to the corporation.

The fair market value on March 31, 1957, of the 1,000 shares of no-par stock of the corporation issued to Arthur Kniffen on that date was $20,000.

Petitioner ceased operating as a proprietorship after the close of business on March 31, 1957. During 1957 Kniffen Subdivision Sales, Inc., changed its name to Arthur L. Kniffen Real Estate Co. and is presently known by that name.

The corporation used the same basis for depreciation of the assets acquired from petitioner on March 31, 1957, as had been used by him in his proprietorship operations.

On their joint income tax return for 1957 petitioners did not report any gain or loss resulting from the transfer of petitioner's proprietorship assets to the corporation on March 31, 1957.

The respondent determined that the above-described transaction constituted a taxable exchange resulting in the realization of recognized gain by Arthur Kniffen in the amount of $34,652.13, taxable to petitioner for 1957.

OPINION.

The respondent contends that upon petitioner's transfer of his proprietorship assets to Kniffen Subdivision Sales, Inc., he not only received 1,000 shares of stock (the fair market value of which was determined by the respondent to be $20,000), but he also received "other property or money" in the form of a discharge of indebtedness, and a promissory note payable to himself, and he therefore realized gain during 1957 in the amount of $34,652.13 which is recognized and taxable to him for that year.

Petitioners have taken the position that Arthur Kniffen received only 1,000 shares of the stock of the corporation in exchange for the assets and liabilities transferred to it on March 31, 1957, and that since he owned more than 80 percent of the outstanding stock of the corporation immediately after the transfer, the transaction in question falls squarely within the scope of section 351 of the 1954 Code [2] and brings into operation section 357(c)(1), under which it is only a partially taxable transaction, i.e., to the extent of $8,246.58, the amount by which the liabilities transferred exceeded the adjusted basis of the assets.

It is apparent that *if* section 351 is applicable to the transaction here involved, the result for which petitioners contend is correct. Section 357(c)(1) states:

SEC. 357. ASSUMPTION OF LIABILITY.
   (c) LIABILITIES IN EXCESS OF BASIS.—
     (1) IN GENERAL.—In the case of an exchange—
      (A) to which section 351 applies * * *

*    *    *    *    *    *    *

---

[2] SEC. 351. TRANSFER TO CORPORATION CONTROLLED BY TRANSFEROR.
   (a) GENERAL RULE.—No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation and immediately after the exchange such person or persons are in control (as defined in section 368(c)) of the corporation. For purposes of this section, stock or securities issued for services shall not be considered as issued in return for property.
   (b) RECEIPT OF PROPERTY.—If subsection (a) would apply to an exchange but for the fact that there is received, in addition to the stock or securities permitted to be received under subsection (a), other property or money, then—
     (1) gain (if any) to such recipient shall be recognized, but not in excess of—
      (A) the amount of money received, plus
      (B) the fair market value of such other property received ; and
     (2) no loss to such recipient shall be recognized.

if the sum of the amount of the liabilities assumed, plus the amount of the liabilities to which the property is subject, exceeds the total of the adjusted basis of the property transferred pursuant to such exchange, then such excess shall be considered as a gain from the sale or exchange of a capital asset or of property which is not a capital asset, as the case may be.

The essential point of disagreement between the parties is: What did petitioner receive in exchange for the assets and liabilities transferred to Kniffen Subdivision Sales, Inc., in 1957? Did he receive only stock, as he contends, or did he receive a note and "other property or money" in the form of a discharged debt in addition to the stock, as the respondent claims?

With respect to the promissory note in the amount of $6,405.55 which respondent claims Kniffen received on March 31, 1957, the record discloses that at the time of the transfer of his individual proprietorship assets and liabilities to Kniffen Subdivision Sales, Inc., his accounts showed an excess of the basis of his assets over his total liabilities. With this understanding, the corporation authorized the issuance to petitioner of a note for $6,405.55. However, a careful audit of Kniffen's books by his newly employed accountant revealed substantial losses in bank deposits due to a prior embezzlement of funds, resulting in an excess of his liabilities over the basis of his assets. Consequently, although the note in question was executed by the vice president of the corporation, it was never delivered to petitioner, nor even seen by him. No payment to Kniffen in connection with this note or in lieu thereof has been made. It is clear from the evidence presented that petitioner did not receive the note in question, nor any money or property as a substitute therefor.

Among the liability accounts transferred by petitioner to Kniffen Subdivision Sales, Inc., on March 31, 1957, was an account in the amount of $44,625.79 owing by Kniffen to the corporation and which, prior to the exchange, was reflected on the books of the corporation as an account receivable. On March 31, 1957, after the transfer by petitioner of his sole proprietorship assets and liabilities to Kniffen Subdivision Sales, Inc., the books of the corporation disclosed no outstanding balance under the above-described account receivable.

The respondent claims that the "assumption" by the corporation of all of petitioner's liabilities resulted in the discharge or cancellation by the transferee corporation of this particular debt in the amount of $44,625.79, and that the discharge constituted "other property or money" within the meaning of section 351(b), thereby rendering section 351(a) (and sec. 357(a)) inapplicable to the transaction in question.

The respondent does not suggest, however, that section 357(b)(1) has application here.[3]

The petitioner contends that the release of his liability to the corporation in the amount of $44,625.79 resulting from the transfer of all his assets and liabilities to it constitutes the "assumption" of "a liability of the taxpayer" within the meaning of section 357(a) of the Code,[4] and that the respondent's contrary contention contravenes the purpose, if not the language, of that section.

Section 357(a) of the 1954 Code provides generally that the assumption of a liability of the taxpayer by a party to a reorganization under section 351, 361, 371, or 374 shall not be treated as "money or other property" and gain shall not be recognized by the transferor on account of such assumption. This provision was added to the Code in 1939 by the addition of subsection (k) of section 112 as a result of the decision of the Supreme Court in *United States* v. *Hendler*, 303 U.S. 564 (1938). The *Hendler* case involved a corporate reorganization in which the transferee corporation assumed and later paid an indebtedness of the transferor. The Court held that such assumption and payment constituted taxable income to the transferor. In so holding, the Court stated:

The transaction, however, under which the Borden Company assumed and paid the debt and obligation of the Hendler Company is to be regarded in substance as though the $534,297.40 had been paid directly to the Hendler Company. The Hendler Company was the beneficiary of the discharge of its indebtedness. Its gain was as real and substantial as if the money had been paid it and then paid over by it to its creditors. The discharge of liability by the payment of the Hendler Company's indebtedness constituted income to the Hendler Company and is to be treated as such.

Because an assumption of the liabilities of the transferor is commonly an integral part of corporate reorganizations, Congress amended

---

[3] SEC. 357. ASSUMPTION OF LIABILITY.

(b) TAX AVOIDANCE PURPOSE.—

(1) IN GENERAL.—If, taking into consideration the nature of the liability and the circumstances in the light of which the arrangement for the assumption or acquisition was made, it appears that the principal purpose of the taxpayer with respect to the assumption or acquisition described in subsection (a)—

(A) was a purpose to avoid Federal income tax on the exchange, or

(B) if not such purpose, was not a bona fide business purpose, then such assumption or acquisition (in the total amount of the liability assumed or acquired pursuant to such exchange) shall, for purposes of sections 351, 361, 371, or 374 (as the case may be), be considered as money received by the taxpayer on the exchange.

[4] SEC. 357. ASSUMPTION OF LIABILITY.

(a) GENERAL RULE.—Except as provided in subsections (b) and (c), if—

(1) the taxpayer receives property which would be permitted to be received under section 351, 361, 371, or 374 without the recognition of gain if it were the sole consideration, and

(2) as part of the consideration, another party to the exchange assumes a liability of the taxpayer, or acquires from the taxpayer property subject to a liability,

then such assumption or acquisition shall not be treated as money or other property, and shall not prevent the exchange from being within the provisions of section 351, 361, 371, or 374, as the case may be.

section 112 of the 1939 Code by adding subsection (k) in order to insure the effectiveness of the existing reorganization provisions. The report of the House Ways and Means Committee accompanying the enactment of section 112(k) summarized the purpose of Congress as follows:

It has long been the policy in our income-tax law to give due consideration to the exigencies of business in connection with corporate reorganizations by postponing, in certain specifically described instances, the recognition of gain realized in such transactions. In general, if gain is realized in such a transaction, nonrecognition of the entire gain is allowed only where, under the specifically defined circumstances, the taxpayer transfers property and receives in exchange therefor stock or securities in a corporation which is a party to the reorganization. If, in addition to such stock or securities, other property or money is received, gain is recognized to the extent of such other property or money.

The recent Supreme Court case of *United States* v. *Hendler* (303 U.S. 564 (1938)), has been broadly interpreted to require that, if a taxpayer's liabilities are assumed by another party in what is otherwise a tax-free reorganization, gain is recognized to the extent of the assumption. In typical transactions changing the form or entity of a business it is not customary to liquidate the liabilities of the business and such liabilities are almost invariably assumed by the corporation which continues the business. Your committee therefore believes that such a broad interpretation as is indicated above will largely nullify the provisions of existing law which postpone the recognition of gain in such cases. To enable bona fide transactions of this type to be carried on without the recognition of gain, the committee has recommended section 213 of the bill. [H. Rept. No. 855, 76th Cong., 1st Sess., pp. 18, 19 (1939), 1939–2 C.B. 504.]

The respondent here contends that the transaction in question whereby Kniffen Subdivision Sales, Inc., assumed petitioner's liability to it so that the account receivable in the amount of $44,625.79 was wiped off its books and presumably discharged by operation of law amounts to more than a mere "assumption" of "a liability of the taxpayer" within the meaning of section 357(a). Since petitioner's account owing to the corporation was discharged by operation of law at the time of the exchange, it is the respondent's position that this resulted in the cancellation of indebtedness by Kniffen Subdivision Sales, Inc., and constituted income to Kniffen and "money or other property" within the meaning of sections 357(a) and 351(b) so that the nonrecognition provisions of these sections have no application. In support of his position the respondent relies on our decisions in *R. D. Walker*, 34 B.T.A. 983 (1936), and *John L. Hawkinson*, 23 T.C. 933 (1955), aff'd. 235 F. 2d 747 (C.A. 2, 1956.)

*R. D. Walker*, *supra*, involved a recapitalization wherein the taxpayer exchanged his common stock for a cancellation of his indebtedness and new preferred and common stock. The taxpayer there conceded, and we agreed, that cancellation of his debt to the corporation was the equivalent of cash and constituted "other property or money" within the meaning of section 112(c)(1) of the Revenue Act of 1928.

Not only is *R. D. Walker, supra,* distinguishable on its facts from the situation here involved but that case was decided prior to the enactment of subsection (k) of section 112 of the 1939 Code (sec. 357(a) of the 1954 Code) which, as noted above, provides that the assumption of a liability of the taxpayer shall not be treated as other property or money.

*John L. Hawkinson, supra,* involved a reorganization of two corporations in which the indebtedness of the taxpayer to one of the corporations was canceled. We there stated, "That the debt cancellation was the equivalent of cash is apparently accepted by both parties and finds support in *R. D. Walker,* 34 B.T.A. 983," and concluded that on the facts presented such cancellation of indebtedness resulted in the distribution of a taxable dividend to the taxpayer. Because of factual differences and the omission, due to the concession of the parties, of any mention of the possible applicability of section 112(k) of the 1939 Code in *John L. Hawkinson, supra,* we do not regard either this decision or *R. D. Walker, supra,* as controlling here.

It is obviously correct, as the respondent contends, that from the standpoint of contractual liability there is a basic difference between an "assumption" of liability and a "discharge" of liability. But here the discharge of the liability results from its assumption. Where, as here, a debtor transfers his debt obligation to his creditor for a valid consideration, the interests of the two parties are merged and the indebtedness immediately is extinguished. *Citizens' Trust Co.* v. *Going,* 288 Mo. 505, 232 S.W. 996; *Wonderly* v. *Giessler,* 118 Mo. App. 708, 93 S.W. 1130; *Wright* v. *Anderson,* 62 S.D. 444, 253 N.W. 484; see 6 Williston, Contracts, secs. 1865, 1875 J (1938 ed.).

The $44,625.79 liability owing by petitioner to the corporation could not have been discharged had it not been that Kniffen Subdivision Sales, Inc., first *assumed* it. Absent the assumption, the interests of the parties would not have merged and the indebtedness would not have been extinguished.

As we read sections 351 and 357 of the 1954 Code and section 112(b)(5) and (k) of the 1939 Code, Congress, in employing the term "liability" in section 357(a) and section 112(k), was looking at the *assumption* by the transferee corporation of an existing liability of the transferor, not to the subsequent extinguishment of the debt, whether by payment, operation of law, or otherwise.

Normally the liability accounts transferred pursuant to an exchange qualifying under section 351 will later be discharged in due course by the corporate transferee. But the fact of subsequent discharge and the time of discharge appear to be irrelevant in determining the applicability of that section so long as the liabilities belong to the transferor *at the time of the exchange* and the purpose of the assumption

is other than the avoidance of Federal income tax as described in section 357(b). Conceivably some of the "assumed" liability accounts may be discharged by the acquiring corporation on the same date the exchange was consummated. Others possibly might be defaulted and never discharged. But these facts do not appear to affect the applicability of sections 351 and 357 to an otherwise qualifying exchange.

Nor does it appear to be of critical importance to *whom* the liability is owed. In the drafting and enactment of section 357 of the 1954 Code and section 112(k) of the 1939 Code, Congress appears to have envisioned *all* the liabilities of the transferor, not solely those owing to third party creditors.

The respondent states on brief that to sustain petitioner's position will result in his gain from the exchange in question escaping taxation. In support of his contention he relies upon our decision in *Jack L. Easson*, 33 T.C. 963 (1960), modified 294 F. 2d 653 (C.A. 9, 1961). We there held that where property subject to a mortgage in excess of the adjusted basis of the property was transferred to a controlled corporation, that portion of the resulting gain which represented the excess mortgage liability must be recognized to the transferor at the time of the transfer. In so holding, we noted that if the taxpayer's gain to the extent of the excess of his transferred liabilities over the basis of his assets was to qualify for nonrecognition under section 112(b)(5) of the 1939 Code, such gain would escape taxation altogether.

Prior to 1954, the Internal Revenue Code did not contain a provision comparable to section 357(c)(1) of the 1954 Code which requires the recognition of the excess of transferred liabilities over the adjusted basis of transferred assets. If section 357(c)(1) had been applicable to 1952, it would have produced the precise result reached by our decision in *Jack L. Easson, supra*. Petitioners have conceded that section 357(c)(1) has application in the instant case.

As we view the transaction in question there is no untaxed gain or other tax benefit resulting to the petitioner therefrom. The parties have stipulated the adjusted basis of petitioner's assets as of March 31, 1957, amounted to $285,880.91, and that his liabilities including his $44,625.79 liability to the transferee corporation totaled $294,127.49. As a result of the exchange, petitioner realized gain to the extent of the assumption of the excess of his transferred liabilities over the basis of his assets, or $8,246.58, and the fair market value of the 1,000 shares of no-par stock he received. Petitioner concedes that under section 357(c)(1) the gain resulting from the excess liabilities ($8,246.58) must be recognized at the time of the exchange and represents income taxable to him for 1957. We have found as a fact that the stock received by petitioner at the time of the exchange had a

fair market value of $20,000 on March 31, 1957. The gain realized from the receipt of this stock will be recognized and taxed subsequently upon his disposition of the stock.[5]

To the extent of $36,379.21, petitioner *paid* in assets a *pro tanto* portion of the $44,625.79 liability in question (the indebtedness owing by him to the corporation) and the resulting liability excess of $8,246.58 represents gain taxable to him for the year in issue. In view of the foregoing, we are unable to accept the respondent's contention that the result for which petitioner contends under the application of section 357(c)(1) "would lead to the absurd result of allowing petitioners' gain from the discharge of their indebtedness to escape taxation."

We are of the opinion that in the enactment of sections 351 and 357 of the 1954 Code, and their corresponding section (sec. 112 (b) (5) and (k) of the 1939 Code) in earlier revenue acts, Congress contemplated the qualification for nonrecognition (or partial recognition as in this case under section 357(c)(1)), of just such transactions as the exchange here in question. For the above-stated reasons we hold that the transfer by petitioner of the $44,625.79 liability account to Kniffen Subdivision Sales, Inc., together with all of his other outstanding liabilities, and the resulting discharge of this particular account by the transferee, constitutes an assumption of a "liability of the taxpayer" within the meaning of section 357(a), and did not result in the receipt by him of "other property or money" within the meaning of section 351(b). Consequently the exchange in question does fall within the scope of section 351(a) and results in only the partial recognition of gain to petitioner (to the extent of the excess of the transferred liabilities over the adjusted basis of the assets) under the provisions of section 357(c)(1) of the 1954 Code.

### Issue 2. Interest Income.

#### FINDINGS OF FACT.

Among the assets transferred by petitioner to Kniffen Subdivision Sales, Inc., on March 31, 1957, were certain notes and deeds of trust receivable totaling $38,644, with accrued interest in the amount of $3,139.10. No part of the accrued interest was received or became collectible from the obligor by petitioner during the period January 1, 1957, to March 31, 1957.

On their income tax return for 1957 petitioners reported as interest income the above-mentioned earned interest in the amount of $3,139.10.

In his notice of deficiency, the respondent made no change in the interest income reported by petitioners in the amount of $3,139.10.

---

[5] Petitioner's 1,000 shares of stock in the corporation will have a basis of zero in his hands under sec. 358 (a)(1) and (d) of the 1954 Code.

Petitioners now claim that earned interest in the amount of $3,139.10 was not received by them during 1957, did not become collectible from the obligor during that year, and is not properly taxable to them for the year in question.

Section 451(a) of the 1954 Code provides:

SEC. 451. GENERAL RULE FOR TAXABLE YEAR OF INCLUSION.

(a) GENERAL RULE.—The amount of any item of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under the method of accounting used in computing taxable income, such amount is to be properly accounted for as of a different period.

The respondent contends that petitioners utilized the cash receipts and disbursements method in computing taxable income and preparing their income tax returns for 1957. Although the petitioner's books and records are not in evidence, the testimony presented by Kniffen's accountant, Richard Stoughton, supports the respondent's contention. The record indicates that petitioners computed their taxable income and filed their income tax returns on the cash basis, although for other purposes they may have kept their books on an accrual method of accounting.

The respondent contends that although the earned interest here in issue was not paid to petitioners by the obligors on the notes during 1957, and did not become collectible during that year, they nevertheless collected this interest from Kniffen Subdivision Sales, Inc., on March 31, 1957, upon the receipt by Arthur Kniffen of stock and, according to respondent, "money or other property" in the form of a note and cancellation of indebtedness. In support of his contention the respondent relies on our decision in *Central Building & Loan Association*, 34 T.C. 447 (1960). We there held that earned interest on interest-bearing obligations which were sold pursuant to a plan of liquidation must be recognized and reported by a cash basis taxpayer. The basis for our decision in *Central Building & Loan Association, supra*, was that the taxpayer received cash gain from the sale of its assets, and that such gain included the earned interest item which it actually collected at the time of sale.

In the instant case, petitioner transferred the $3,139.10 accrued interest in question, together with his other assets, to Kniffen Subdivision Sales, Inc., on March 31, 1957, in exchange for stock. Although he collected this interest from the corporation in the form of stock at the time of the exchange, we have held under Issue 1, above, that the transaction qualified for nonrecognition under section 351 of the 1954 Code and that, except for $8,246.58 (the amount by which the liabilities exceeded the adjusted basis of the assets), any gain realized by petitioner upon receipt of the stock is not recognizable on

March 31, 1957, but is to be deferred until disposition of the stock. Accordingly, any gain realized from the stock received by Arthur Kniffen from the corporation in exchange for the transfer to it of accrued interest in the amount of $3,139.10 is not properly reportable by petitioners on their joint income tax return for 1957.

### Issue 3. Promissory Note.

#### FINDINGS OF FACT.

During September or October 1954 petitioner received a promissory note in the face amount of $7,000 as a commission for handling the sale of certain real estate. The note was secured by a lien upon real estate consisting of a motel and tourist court in Effingham, Ill. Petitioner received no payment on this note from the obligor during 1957.

Kniffen Subdivision Sales, Inc., acquired this note in the exchange of March 31, 1957, and exchanged it for a like note in the amount of $7,000 secured by a third deed of trust lien on a different parcel of real estate. The new note received as a result of this exchange was merely a substitute for the original note, not payment of the obligation which it represented.

On their joint income tax return for 1957 petitioners reported as income $13,271.37 as "sales commissions," which included $7,000 representing the face amount of the note.

In his notice of deficiency the respondent made no change in the $7,000 amount reported by petitioners in their return for 1957.

#### OPINION.

Petitioners contend that the $7,000 promissory note received by them during 1954 does not constitute income to them for 1957 inasmuch as they received no payment thereon during that year.

The respondent contends that petitioners received in 1957 a new promissory note in the amount of $7,000 in payment of the previous note in that amount which they had received as a sales commission in 1954.

It is clear from the record that petitioner did not receive the original promissory note as payment for his sales commission during 1957 and that he actually received nothing as payment thereon during that year. It is true that this note was exchanged for another note in like amount during 1957 and that the collateral securing the note was shifted from one piece of real estate to another during that year. This exchange was made by the officers of Kniffen Subdivision Sales, Inc., not by petitioner, and, as we understand the record before us, the note was regarded by the parties merely as a substitute for the original note, not as payment in satisfaction of the debt represented thereby.

*Jay A. Williams*, 28 T.C. 1000 (1957); *Robert J. Dial*, 24 T.C. 117 (1955); *Schlemmer* v. *United States*, 94 F. 2d 77 (C.A. 2, 1938).

However, petitioner received stock in exchange for the $7,000 promissory note he transferred to the corporation on March 31, 1957, together with his other proprietorship assets. Although he was paid in stock at the time of the exchange, since we have held under Issue 1, *supra*, that the exchange qualified for nonrecognition under section 351, any gain realized by Kniffen from the receipt of stock is not recognizable and not properly reportable by petitioners on their joint return for 1957.

*Issue 4. Business Expenses.*

FINDINGS OF FACT.

On their joint income tax return for 1957 petitioners claimed a deduction for business expenses in the total amount of $56,829.13. To the extent of $22,466.31, these business expenses were not paid by petitioner during 1957 but were assumed and, to the extent of $20,146.23, were later paid by Kniffen Subdivision Sales, Inc., on March 31, 1957.

The respondent has determined that the business expense deduction claimed by petitioners for 1957 is not allowable to the extent of $22,466.31.

OPINION.

Petitioners contend that they kept their books and records on an accrual basis during 1957 and that they incurred and properly accrued the business expense items in question totaling $22,466.31.

We have found as a fact that petitioners prepared and filed their income tax return for 1957 on the cash basis. There is no evidence in the record that petitioners requested or received the respondent's consent to change their method of accounting and reporting for or during the year 1957. Absent such express consent on the part of the respondent, petitioners are not entitled to shift their method of computing or reporting their income and expenses from their previously established method of accounting to a different method.[6] *Josef C. Patchen*, 27 T.C. 592 (1956), reversed on another issue 258 F. 2d 544 (C.A. 5, 1958); *American Conservation Service Corporation*, 24 B.T.A. 183 (1931).

---

[6] SEC. 446. GENERAL RULE FOR METHODS OF ACCOUNTING.

(a) GENERAL RULE.—Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books.

*    *    *    *    *    *    *

(e) REQUIREMENT RESPECTING CHANGE OF ACCOUNTING METHOD.—Except as otherwise expressly provided in this chapter, a taxpayer who changes the method of accounting on the basis of which he regularly computes his income in keeping his books shall, before computing his taxable income under the new method, secure the consent of the Secretary or his delegate.

As an alternative contention, petitioners claim that they actually paid the business expense items in question totaling $22,466.31 during 1957 by transferring them to the corporation which assumed these expenses on March 31, 1957. The argument that the assumption of these liabilities by the transferee corporation constitutes payment to third party creditors is obviously lacking in merit and does not require further discussion. See *Citizens Nat. Trust & Savings Bank* v. *Welch*, 119 F. 2d 717 (C.A. 9, 1941); *Doggett* v. *Commissioner*, 275 F. 2d 823 (C.A. 4, 1960), affirming a Memorandum Opinion of this Court.

We accordingly hold that the business expenses in question, to the extent of $22,466.31, claimed by petitioners on their return for 1957 are not properly deductible and the respondent's determination must be sustained.

*Issue 5. Office Facilities Expense.*

FINDINGS OF FACT.

During years prior to 1957 and through the period January 1, 1957, to January 31, 1957, petitioner and his "several" controlled corporations shared the same office facilities.[7] Petitioner had agreed with each of his controlled corporations to pay on its behalf the cost of its office rental, telephone, postage, stationery, and other office expenses. The practice followed by petitioner prior to 1957 was to allocate periodically to each corporation the amount of its pro rata share of such office expenses and to collect reimbursement from it for the amount he had expended on its behalf.

The ratable share of the office expenses of Kniffen Subdivision Sales, Inc., for the period January 1, 1957, to March 31, 1957, amounted to $2,458.23. Petitioner did not actually pay any part of this office expense of the corporation and received no cash reimbursement therefor. Petitioner included the amount of $2,458.23 among his "accounts payable" which he transferred to the corporation for stock on March 31, 1957, and which were assumed by it at that time. On their income tax return for 1957 petitioners reported an income item of $2,458.23 as "Revenue from Office Service."

In his notice of deficiency, the respondent made no change in the above-mentioned item of income reported by petitioners in the amount of $2,458.23.

OPINION.

Petitioners now claim that they erroneously reported as "Revenue from Office Service" the amount of $2,458.23 on their income tax re-

---

[7] Except for Kniffen Subdivision Sales, Inc., the corporations are not identified by the record.

turn for 1957 and that this amount is not properly taxable to them for that year.

Respondent does not suggest that petitioners actually received payment from Kniffen Subdivision Sales, Inc., of office expenses for the period January 1, 1957, to March 31, 1957, but contends rather that if they are permitted to exclude from their income the amount in question, this will be equivalent to a holding that petitioners are entitled to *deduct* this amount from their proprietorship income and because the corporation claimed a like amount as a deduction on its 1957 return, "the same expense items may not be deducted by two taxpayers."

We are unable to see the merit of the respondent's argument. The issue before us, as framed by the pleadings and presented on brief, is whether or not petitioners are required to report the amount of $2,458.23 as an income item on their return for 1957. This can hardly be regarded as tantamount to the question whether petitioners are entitled to claim a statutory deduction of $2,458.23 from their properly reported income.

Further, if, as the record evidence indicates, the corporation claimed a deduction in the amount of $2,458.23 on its income tax return for its fiscal year ended September 30, 1957, this fact has no relevance to the question whether petitioners properly reported the amount in issue as income for 1957.

Petitioners computed their taxable income and prepared their income tax return for 1957 on the cash basis. The testimony offered at the trial establishes that they did not actually pay out any of the office expenses here in question, and that they received no cash as reimbursement therefor.

Since, as we have held under Issue 1, *supra*, the liabilities of petitioner assumed by the corporation on March 31, 1957, are taxable to him only to the extent that they exceed the adjusted basis of the assets acquired from him, or $8,246.58, and any gain realized by him upon the receipt of stock is to be deferred until a future disposition requires its recognition, we hold that petitioners are not required to report $2,458.23 as income from "Revenue from Office Services" on their return for 1957.

### *Issue 6. Sales Commission.*
#### FINDINGS OF FACT.

Arthur Kniffen received $465.30 from George Morelock as a sales commission. As a result of further dealings between petitioner and Morelock, the foregoing amount was later repaid to him by Kniffen.

Petitioners did not report any part of the above-mentioned $465.30 as income on their joint income tax return for 1957.

Respondent has determined that petitioners realized unreported income for 1957 in the amount of $465.30.

569

OPINION.

Petitioner received $465.30 as a sales commission. It is not clear from the record whether he received this amount during 1957 as the respondent has determined or prior thereto. The testimony presented here discloses that as a result of subsequent dealings with the payor, petitioner became indebted to him to the extent of $465.30 and later repaid him that amount. Whether or not such repayment was made during 1957 is not clear.

Because petitioners have failed to establish that they did not receive the amount in question during 1957 or that they did not receive it under a claim of right by which they were entitled to its unrestricted use, we must sustain the respondent's determination that it constitutes taxable income reportable by petitioners on their return for 1957. *North American Oil Co.* v. *Burnet*, 286 U.S. 417 (1932); *Healy* v. *Commissioner*, 345 U.S. 278 (1953); *Automobile Club of New York*, 32 T.C. 906 (1959), affd. 304 F. 2d 781 (C.A. 2, 1962).

## *Issue 7. Lease Deposit.*
### FINDINGS OF FACT.

During 1957, petitioner received a lease deposit in the amount of $50 from Robert Eggleston.

On or about April 2, 1957, Kniffen Subdivision Sales, Inc., repaid Eggleston his lease deposit in the amount of $50.

Petitioners did not report any part of the foregoing $50 as income on their joint income tax return for 1957.

Respondent has determined that petitioners realized unreported income for 1957 in the amount of $50.

### OPINION.

Petitioners do not question that they received $50 as a lease deposit during 1957. They contend, however, that the deposit was repaid to the tenant at the expiration of the lease.

The evidence presented establishes that such repayment was by Kniffen Subdivision Sales, Inc., rather than by petitioner.

Inasmuch as petitioners have failed to show that they did not receive the deposit in question under a claim of right and did not have the unrestricted use thereof, we must sustain the respondent's determination on this issue. *North American Oil Co.* v. *Burnet, supra; Healy* v. *Commissioner, supra.*

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

ATKINS, *J.*, dissenting: I am unable to agree with the holding of the majority that the cancellation of the petitioner's indebtedness to

the corporation in the amount of $44,625.79 constituted an "assumption" of such indebtedness within the meaning of section 357 of the Internal Revenue Code of 1954. Rather, as a result of the cancellation the petitioner was in receipt of "other property or money" in the amount of the debt and therefore the gain on the overall transaction must, under section 351, be recognized, but not in excess of such "other property or money." Section 357(c)(1) has no application since the indebtedness to third parties which was assumed by the corporation did not exceed the adjusted basis of the assets transferred.

TIETJENS, OPPER, and PIERCE, *JJ.*, agree with this dissent.